In re STEAK LOFT OF OAKDALE, INC., Debtor.

Bankruptcy No. 880–01604.

United States Bankruptcy Court, E. D. New York.

March 30, 1981.

Rothstein & Weinstein, Melville, N. Y., for Staltac Associates.

Saxe, Bacon & Bolan, P. C., New York City, for debtor.

C. ALBERT PARENTE, Bankruptcy Judge.

On April 3, 1980, Steak Loft of Oakdale, Inc. ("debtor") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. On August 15, 1980, Staltac Associates ("landlord"), an interested party pursuant to 11 U.S.C. Section 1109(b), moved to convert the case from a Chapter 11 to a case under Chapter 7, pursuant to 11 U.S.C. Section 1112, or in the alternative, for an order appointing a trustee pursuant to 11 U.S.C. Section 1104.

A summary of the pertinent facts follows:

(1) Prior to the filing of the Chapter 11 petition, the debtor corporation operated a restaurant at the premises located at 4500 Sunrise Highway, Oakdale, New York, pursuant to a lease entered into with the landlord on November 27, 1973. During the lease term, the debtor frequently fell behind in its rent payments, but these situations were settled amicably.

(2) To secure the payment for an indebtedness in the amount of $50,000, the parties entered into a security agreement on March 24, 1975. Pursuant to said agreement, the debtor conveyed to the landlord a security interest in all of the debtor's equipment, furniture, utensils, trade fixtures and all other after-acquired chattel property.

(3) As of February, 1980, the debtor was liable to the landlord in the sum of $20,-750.70 for rent arrearages. Furthermore, the outstanding balance under the security agreement was in the sum of $25,000.

(4) In view of the aforementioned circumstances, the landlord commenced eviction proceedings against the debtor in state court. A default judgment was issued by the District Court of Suffolk County on March 19, 1980, permitting the landlord to recover the premises occupied by the debtor.

(5) On March 25, 1980, the landlord mailed to the debtor at the premises in question the notice required by the security agreement. Said notice apprised the debtor that pursuant to the security agreement the landlord had elected to enter the premises for the purpose of conducting a sale of the collateral set forth in said agreement. On March 31, 1980, the sale was completed. The sale was conducted by the landlord and the collateral was purchased by the landlord.

(6) Subsequent to the filing of the Chapter 11 petition, the debtor filed an order to show cause in the District Court of Suffolk County seeking to vacate the eviction judg-

ment and the state court set the matter down for a traverse hearing.

(7) On July 21, 1980, the debtor filed a motion in this Court seeking an order pursuant to 28 U.S.C. Section 1478(a) removing the traverse hearing to this Court. The landlord did not oppose the debtor's motion. Said motion was granted on October 23, 1980.

(8) On October 23, 1980, the traverse hearing was held in this Court. The Court vacated the eviction judgment issued by the state court, predicated on this Court's finding of a defect in the service of process by the landlord in the state court action.

(9) It should be noted that as a result of the conviction of Steve Rubell (the debtor's president and sole shareholder), of income tax evasion, the State of New York Liquor Authority revoked the debtor's liquor license, effective February 29, 1980. Further, the debtor was summoned to appear before the District Court of Suffolk County on March 31, 1980, to answer charges of land use violations. Due to the debtor's nonappearance at said hearing, the debtor's Public Assembly Permit and Certificate of Occupation were revoked. The landlord has taken steps to remedy the involved violations.

(10) It should also be noted that since February, 1980, the debtor has not been actively engaged in business. Further, aside from the cursory data found in the Chapter 11 petition that the debtor's liabilities exceed its assets, there is no financial data concerning the debtor's operation.

Whether the Court should grant the relief requested by the landlord rests on the resolution of the following issues:

(a) Does sufficient cause exist to convert the present Chapter 11 proceeding to one under Chapter 7;

(b) Is there sufficient cause for the appointment of a trustee?

In the case at bar, the landlord's motion to remove the Chapter 11 case to a Chapter 7 case is premised upon four points: (1) the termination of the lease held by the landlord and the landlord's subsequent re-letting of the premises; (2) the debtor's lack of machinery necessary to operate a restaurant; (3) the debtor's loss of its liquor license; and (4) the debtor's loss of its Public Assembly Permit and and its Certificate of Occupation.

In contraposition to each of these grounds, the debtor contends: (1) the District Court's default judgment of eviction has been vacated and the debtor is entitled to both possession and damages incurred as a result of the re-letting by the landlord; (2) while the debtor's machinery has been subject to a pre-petition foreclosure sale, replacement machinery is ready and waiting; (3) the lack of a liquor license does not present an insurmountable obstacle to the successful resumption of business. Further, since the revocation was the result of the criminal acts of one individual, the license may well be reissued. In any event, if the enterprise were not liquidated, but rather sold in its on-going status, the new owners would be able to obtain a liquor license independently of the debtor. Finally, the Public Assembly Permit and the Certificate of Occupation were revoked when the debtor failed to answer charges of safety infractions. Since the debtor was not in possession of the premises on the date of the scheduled hearing, the debtor saw no reason to appear. The debtor contends, however, that it easily can remedy the situation once possession is obtained.

## I.

The landlord's request for relief is predicated on Section 1112(b)(1), which states in pertinent part:

Except as provided in subsection (c) of this section, *on request of a party in interest*, and after notice and a hearing, the court *may* convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, *for cause, including* ... (1) continuing loss to or diminution of the estate *and* absence of a reasonable likelihood of rehabilitation .... (emphasis added)

*LOSSES*

■ A finding of insolvency does not foreclose the possibility of reorganization. *In re Farrington Mfg. Co.*, 540 F.2d 653, 658 (4th Cir. 1976) (former ch. X); *In re Castle Beach Apts.*, 113 F.2d 762, 763 (2d Cir. 1940) (former ch. X).

Indeed, within the context of Chapter 11 proceedings under the Bankruptcy Code:

(T)he presumption is that the debtor will continue in possession and that current management will continue to manage the debtor's affairs ... The mere fact of filing for debtor relief under the Bankruptcy Code, the fact of insolvency, which may ensue as a result of any number of factors independent of the abilities and integrity of current management, does not demonstrate that the debtor is incapable or unsuited to superintend its own reorganization.

*In re La Sherene, Inc.*, 3 B.R. 169, 174 (Bkrtcy. N.D.Ga.1980).

Further, a negative cash-flow, or a positive cash-flow which is offset by actual depreciation in the property value of the estate may qualify as continuing losses. 5 Collier on Bankruptcy (15th ed.) Paragraph 1112.03(c)(i).

As previously stated, the insolvency of a Chapter 11 debtor neither obviates reorganization nor necessitates conversion to a Chapter 7 case. *In re La Sherene, Inc.*, supra at 174; *In re Farrington Mfg. Co.*, supra at 658; *In re Castle Beach Apts.*, supra at 763. In fact, the record before the Court is devoid of any fiscal data from which a pattern of recurring losses may be discerned. The four points cited by the landlord as grounds for conversion may have an effect upon the debtor's reorganization and, therefore, may be factors in an ultimate determination. For example, the interval of the debtor's non-operation may have had an adverse effect on the clientele. This adversity may well be magnified by the lack, albeit temporary, of a liquor license and by the time necessary to install new machinery and to remedy the land use violations.

However, the four points upon which the landlord relies do not alone qualify as continuing losses, particularly in light of the debtor's allegation of reachable cure.

*REHABILITATION*

■ Continuing losses are not the only "suggested" requisite for conversion. The Court must also be satisfied that there is no reasonable likelihood for the debtor's rehabilitation. *See*, 5 Collier on Bankruptcy (15th ed.) Paragraph 1112.03(c)(i). This factor is satisfied when the debtor's reorganization is a hopeless and unrealistic prospect. *In the Matter of Maplewood Poultry Co.*, 2 B.R. 545, 549, (Bkrtcy. D.Me.1980) (remoteness and conjectural reorganization prospects make liquidation appropriate); *In the Matter of Growth Industries, Inc.*, 5 B.C.D. 1030, 1032 (W.D.Mo.1979); *Magidson v. Duggan*, 212 F.2d 748, 760 (8th Cir. 1954) (former Ch. X reorganization was "not feasible"); *Lehman v. Commissioner of Internal Revenue*, 129 F.2d 288, 290 (2d Cir. 1940) (former Ch. X).

■ The underlying policy of reorganization proceedings is "to save a sick business, not to bury it and divide up its belongings." *In re Flying W Airways, Inc.*, 341 F.Supp. 26, 99 (E.D.Pa.1972), *quoting from Susquehanna Chemical Corporation v. Producers Bank and Trust Co.*, 174 F.2d 783, 787 (3d Cir. 1949). Therefore, it is only when reorganization is no longer a realistic and viable undertaking that the debtor should be removed from the cover of the "umbrella of the reorganization court." *In the Matter of Maplewood Poultry Co.*, supra at 549.

■ Once again, the information before the Court in the case at bar is insufficient to warrant any resolution of the issue of the probability of the debtor's rehabilitation. While recent events have led the debtor's management to seek Chapter 11 reorganization, the absence of the specifics of the debtor's past financial performance results in a deficiency in the facts necessary to a properly grounded ruling on the landlord's motion to convert.

In sum, the contingent nature of the landlord's grounds for conversion of the

debtor's Chapter 11 case into a case under Chapter 7 and the absence of pertinent accounting data concerning the status of the debtor restaurant prior to the filing of the Chapter 11 petition are obstacles to a well-reasoned adjudication of the landlord's motion to convert. Such information is essential to the proper resolution of the issues to be addressed in an application for the dismissal or conversion of a Chapter 11 case where the debtor's business has been nonoperational for more than a year.

Therefore, a determination as to whether the debtor's Chapter 11 case should be converted to a Chapter 7 case cannot be rendered at this time.

## II.

The Court's authority to appoint a trustee lies in 11 U.S.C. Section 1104(a), which provides in pertinent part:

> At any time after the commencement of the case but before the confirmation of a plan, on request of a party in interest, and after notice and a hearing, the court shall order the appointment of a trustee__
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management . . . ; or
>
> (2) if such appointment is in the interests of the creditors, any equity security holders, and any other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

While the legislative history with respect to Section 1104 is sparse, the section is flexible, allowing the Court discretion to treat each case individually. *In re Hotel Associates, Inc.*, 7 B.R. 130, 6 B.C.D. 160 (Bkrtcy. E.D.Pa.1980); *In re Parr*, 1 B.R. 453, 5 B.C.D. 1143 (Bkrtcy. E.D.N.Y.1979); 5 Collier on Bankruptcy (15th ed.) Paragraph 1104.01.

■ It is not an abrogation of the policy considerations underlying Chapter 11 to appoint a trustee to investigate and operate a debtor corporation. *In re Hotel Associates,*

*Inc., supra*, 7 B.R. 130, 6 B.C.D. at 160; *In re La Sherene, Inc.*, 3 B.R. 169, 6 B.C.D. 153 (Bkrtcy. N.D.Ga.1980); *In re Philadelphia & Reading Coal & Iron Co.*, 105 F.2d 354 (3d Cir. 1939).

■ Predicated on this Court's prior finding that there presently are insufficient facts available for a determination of the landlord's motion to convert this Chapter 11 case to a case under Chapter 7, the Court hereby appoints Michael F. Ingham as trustee, pursuant to Section 1104. Said trustee shall, in addition to his duties listed in Section 1106(a), investigate the four aforementioned contingencies on which the landlord bases its motion for conversion; investigate the debtor's financial history and its likelihood for rehabilitation into a sound commercial entity, giving proper consideration to the present potential value of the debtor's assets upon liquidation; and assume control of the debtor to the extent necessary to facilitate rehabilitation.

Further, pursuant to Section 1106(a)(5), the trustee is hereby directed, within 90 days of his appointment, to file with the Court his recommendation as to whether it is in the best interests of the creditors and the estate to continue the Chapter 11 proceedings or to convert said case to Chapter 7.