**In re CHUGIAK BOAT WORKS, INC., Debtor.**

**Bankruptcy No. 3–80–00386.**

United States Bankruptcy Court, D. Alaska.

March 11, 1982.

James D. Sourant, Sourant & Strandberg, Anchorage, Alaska, for Silver King River Runners.

Mark P. Worcester, Perkins, Coie, Stone, Olsen & Williams, Anchorage, Alaska, for Alaska Renewable Resources Corp.

## MEMORANDUM OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

Silver King River Runners (Silver King) has filed an application asking the Court to order disbursement of a deposit paid to Chugiak Boat Works, Inc., (Chugiak), while the latter was operating as a debtor in possession pursuant to Chapter 11 of the Bankruptcy Reform Act of 1978 (Code), 11 U.S.C. § 101 *et seq.* Chugiak has subsequently converted the case to one under Chapter 7 of the Code. Silver King argues that its claim has priority as an administrative expense pursuant to § 507(a)(1) of the Code, 11 U.S.C. § 507(a)(1). The application has been opposed by Alaska Renewable Resources Corporation (ARRC), a secured creditor of Chugiak, which argues that Sil-

ver King's claim does not qualify as an administrative expense but is a rejected executory contract, which must be treated as a prepetition claim pursuant to § 502(g) of the Code. Having considered the arguments of the parties, this Court finds that Silver King's claim, which arises from an executory contract entered into during the Chapter 11 reorganization but before conversion to Chapter 7, constitutes an administrative expense within the meaning of § 503(b) of the Code and is entitled to priority pursuant to § 507(a)(1).

## I. Facts

Chugiak Boat Works, Inc., filed a petition for relief under Chapter 11 of the Bankruptcy Code on December 12, 1980. The corporation carried on its business as debtor in possession until May 28, 1981, when it voluntarily converted the proceeding to a case under Chapter 7. A trustee is now administering the affairs of the Debtor.

On or about March 20, 1981, after the order for relief under Chapter 11 but before Chugiak's conversion to Chapter 7, Silver King paid to Chugiak $4,150 as a down payment on a boat to be manufactured by Chugiak in the ordinary course of its business for Silver King. Silver King filed a proof of claim on July 28, 1981.

At the hearing of this matter, the Trustee asserted that the estate would be able to pay at least twenty-five percent of all administrative expenses.

## II. Applicant's Claim Constitutes an Administrative Expense

■ This Court finds that where a customer makes a deposit pursuant to an agreement to receive the essential goods or services provided in the ordinary course of business by a debtor in possession during a Chapter 11 reorganization, the obligation to return the deposit constitutes an administrative expense should the debtor subsequently convert its case to one under Chapter 7 and fail to perform under the agreement. Where the obtaining of such deposits was necessary to a successful reorganization, the obligation represents a necessary cost of preserving the estate, pursuant to § 503(b)(1)(A). The history of the bankruptcy law's treatment of executory contracts, together with the provisions of the Code, particularly sections 365(g) and 363(c)(1), compel the conclusion that the Court is authorized to treat such obligations as administrative expenses. The policy of Congress of encouraging alternatives to liquidation bolsters this conclusion, since the protection of potential customers of a debtor in possession is necessary to foster a successful reorganization.

The obligation to repay Silver King is an administrative expense entitled to priority under § 507(a)(1)[1] because it represents an actual and necessary cost of preserving the estate within the meaning of § 503(b)(1)(A).[2] The incurring of such obligations was, at the time, necessary to the preservation of the estate as a going concern. Without such agreements there would have been no possibility of a successful reorganization.

ARRC relies on two provisions of the Code to argue that a claim arising from an executory contract entered into in the course of a Chapter 11 reorganization and subsequently rejected after conversion to Chapter 7 does not give rise to an administrative expense but must be treated as a claim which arose prior to the original Chapter 11 petition. The first of these provisions is § 348(d), which reads:

> claims allowed under Section 502(f) of this title, including—
>> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case . . .
>> . . . .

1. Section 507(a)(1) states:
(a) The following expenses and claims have priority in the following order:
(1) First, administrative expenses allowed under Section 503(b) of this title, . . .
. . . .

2. Section 503(b) reads, in pertinent part:
(b) After notice and a hearing, there shall be allowed, administrative expenses, other than

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

The second provision, which, according to ARRC, reaffirms in the case of executory contracts the general rule of § 348(d), is § 502(g), which reads:

(g) A claim arising from the rejection, under section 365 of this title or under a plan under Chapter 9, 11 or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

Neither of the provisions relied on by ARRC is dispositive of the issue before the Court, which is whether an executory contract reasonably entered into in the course of a Chapter 11 reorganization but rejected after conversion to Chapter 7 constitutes an administrative expense. Section 348(d) specifically excepts from its reach administrative expenses. Section 502(g) concerns only executory contracts which were entered into by the debtor prior to the commencement of the Chapter 11 proceeding and which have never been assumed by the debtor in the reorganization proceeding.[3] *Cf.* 1A Bkr.L.Ed. § 6:193, at pp. 299–300

(1981). The provisions of the Code, particularly sections 365(g) and 363(c)(1), when viewed in the light of the history of the treatment of executory contracts under the Bankruptcy Act of 1898, show a legislative intent to authorize the bankruptcy court to treat executory contracts entered into during a Chapter 11 reorganization and later rejected, as administrative expenses when the Court views those contracts as having been reasonably made in the ordinary course of the debtor's business.

Courts interpreting the administrative expense provisions of the Bankruptcy Act of 1898 held that those provisions, which were very similar to those contained in the present Code,[4] authorized the courts to treat as administrative expenses executory contracts entered into during reorganization but before conversion to straight bankruptcy. In *In re Avorn Dress Co.*, 78 F.2d 681, 683 (2nd Cir. 1935), for example, the Court held that obligations arising from purchases and sales made by the debtor in possession in the ordinary course of business before conversion to straight bankruptcy would constitute administrative expenses, with no need for prior court approval of the transactions. And in *In re California Eastern Airways*, 95 F.Supp. 348, 350–351 (D.Del.1951), the Court in describing a claim for debtor's breach of an airplane lease agreement made in the ordinary course of debtor's business, declared:

In reorganization or arrangement proceedings, and to a more limited extent, in straight bankruptcy proceedings, a trustee or debtor in possession may be authorized to enter into contracts which are

---

**3.** The only executory contracts which a debtor in possession can *assume* are those which are in existence prior to the time of the filing of the Chapter 11 petition. Executory contracts which arise after the filing of a Chapter 11 petition are *entered into* by the debtor in possession, as opposed to being assumed. Section 502(g), by its terms, applies only to "an executory contract ... of the debtor that has not been assumed...."

**4.** Section 64 of the Bankruptcy Act, former 11 U.S.C. § 104, read, in pertinent part, as follows:
a. The debts to have priority, in advance of the payment of dividends to creditors, and to

be paid in full out of bankrupt estates, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition ....

Section 62 of the Bankruptcy Act, former 11 U.S.C. § 102, read, in pertinent part, as follows:
a. (1) The actual and necessary costs and expenses incurred by officers ... in the administration of estates shall ... be reported in detail under oath, and examined and approved or disapproved by the court....

necessary or expedient for the administration of the estate of the debtor or bankrupt and a commitment thus made will constitute a priority claim as an expense of administration under the provisions of §§ 62, and 64 of the Bankruptcy Act.

In 1967, Congress amended Chapters X, XI, and XII of the Bankruptcy Act of 1898 to sanction the result that had been reached by the Courts under the administrative expense provisions of the Act. The amendment explicitly provided that any executory contract entered into or assumed during the reorganization proceeding but rejected after conversion to straight bankruptcy constituted an administrative expense of the reorganization proceeding.[5] The legislative history indicates that the amendment was intended to resolve confusion over how such executory contracts should be treated and to recognize the rights of those parties "who have dealt with an officer of the court in the debtor relief proceeding." Senate Report No. 90–749, 90th Cong. 1st Sess. (1967), *reprinted at* U.S.Code Cong. & Admin.News 1967, pp. 2002, 2005. Thus, pursuant to the 1967 amendment, all executory contracts originally entered into during the reorganization as well as all executory contracts assumed during that time were automatically granted administrative expense priority.

Although ARRC argues that sections 348(d) and 502(g) radically change prior law concerning the treatment of executory contracts, a review of the Code convinces this Court that Congress intended to work only a subtle change in this aspect of the bankruptcy law. Section 365(g) of the Code clearly grants automatic administrative expense priority to executory contracts as-

sumed during a reorganization and later rejected after conversion, thus continuing the practice under the Bankruptcy Act. In light of the virtual identity in effect of contracts initially entered into during reorganization and contracts assumed during that time, the administrative expense provisions of the Code must be read to authorize the Court also to treat contracts initially entered into during reorganization as administrative expenses, with one difference: while assumed contracts, having already been approved by the Court pursuant to § 365(a) of the Code, are automatically granted administrative expense priority by § 365(g), initially entered contracts will be subject to Court scrutiny under § 503(b) to determine whether the priority will be granted.

The argument that Congress, by enactment of the Code, intended a great change in the post-conversion treatment of executory contracts is refuted by § 365(g). That section defines the time as of which rejection of an executory contract constitutes a breach, as follows:

> Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
>
> (1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title, immediately before the date of the filing of the petition; or
>
> (2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, or 13 of this title—
>
> (A) if before such rejection the case has not been converted under section

---

**5.** The 1967 amendment, 81 Stat. 511, added an identical subsection "b" to sections 238 (Chapter X), 378 (Chapter XI), and 483 (Chapter XII) of the Bankruptcy Act of 1898. That subsection read as follows:

> Any contract which is entered into or assumed by a debtor in possession, receiver, or trustee in a proceeding under this chapter and which is executory in whole or in part at the time of an entry of an order directing that bankruptcy be proceeded with shall be

deemed to be rejected unless expressly assumed within sixty days after the entry of such order or the qualification of the trustee in bankruptcy, whichever is the later, but the court may for cause shown extend or reduce the time. When a contract entered into or assumed in a superseded proceeding is rejected, the resulting liability shall constitute a cost of administration of the superseded proceeding.

1112 or 1307 of this title, at the time of such rejection; or

(B) if before such rejection the case has been converted under section 1112 or 1307 of this title—

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

(ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

The legislative history emphasizes the effect of the section to give different treatment to subsection (2) claims, those which were assumed during a bankruptcy proceeding, from that given subsection (1) claims which, never having been assumed, follow the rule of § 502(g). Both House and Senate reports state in regard to § 365(g):

> Subsection (g) defines the time as of which a rejection of an executory contract or unexpired lease constitutes a breach of the contract or lease. Generally, the breach is as of the date immediately preceding the date of the petition. The purpose is to treat rejection claims as prepetition claims. The remainder of the subsection specifies different times for cases that are converted from one chapter to another. The provisions of this subsection are not a substantive authorization to breach or reject an assumed contract. Rather, they prescribe the rules for the allowance of claims in case an assumed contract is breached, or if a case under chapter 11 in which a contract has been assumed is converted to a case under chapter 7 in which the contract is rejected.

Senate Report 95–989, 95th Cong. 2nd. Sess. 60 (1978); House Report 95–595, 95th Cong. 1st Sess. 349 (1977), U.S.Code Cong. & Admin.News, pp. 5787, 5846, 6305.

Although § 365(g) does not directly set forth its effect on the priority of claims, its evident purpose is to distinguish, first, claims which are to be considered merely as the prepetition claims of general creditors (subsection (1)) from those assumed contracts which are to be treated as administrative expenses (subsection (2)). Then, within subsection (2), the provision distinguishes those claims that are to be treated as administrative expenses of the chapter 11 proceeding (subsection (B)(i)) from those that will be considered administrative expenses of the chapter 7 proceeding and thus entitled to the "superpriority" of § 726(b) (subsection (B)(ii)).[6] The commentators agree that executory contracts that are assumed during reorganization and rejected after conversion are treated as administrative expenses. See 2 Collier on Bankruptcy, ¶ 365.08[1], at p. 365–41 (15th ed. 1981); 1A Bkr.L.Ed., Summary § 6:193, at pp. 299–300 (1981). The history of the Bankruptcy Act's treatment of such assumed contracts and the legislative history of § 365 quoted supra, describing the function of § 365(g) as to "prescribe the rules for allowance of claims", reinforce this interpretation of § 365(g).

■ Although executory contracts initially entered into during the reorganization and never assumed by a trustee do not fall within the literal terms of § 365(g), it seems evident that such contracts which were reasonably entered into should continue to be treated under the Code as they were treated under the Bankruptcy Act, i.e.

---

**6.** Section 726, which determines the order of distribution of property in a chapter 7 liquidation, accords to administrative expenses incurred in the chapter 7 proceeding a higher priority than it accords to administrative expenses incurred in the preconversion reorganization. Subsection 726(b) states:

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), or (6) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this sec-

tion, shall be made pro rata among claims of the kind specified in a particular paragraph, except that in a case that has been converted to this chapter under section 1112 or 1307 of this title, administrative expenses incurred under this chapter after such conversion have priority over administrative expenses incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

similarly to contracts assumed during reorganization.[7] In both situations, the contracting party has dealt with and relied upon an officer of the court. The practical effects of a contract assumed during reorganization and one newly entered into during reorganization are the same. In both cases, the debtor in possession or trustee has had the same opportunity to judge whether the contract is in the best interests of the estate and of its creditors. Indeed, the power given the debtor in possession or trustee to assume or reject executory contracts is intended to enable him to make a new decision as to the wisdom of the contract in light of the changed circumstances of bankruptcy or conversion, as if he were entering into a new contract. The history of similar treatment of newly entered into and assumed contracts further supports this interpretation of the intent of Congress. Nothing in the legislative history of the Code indicates any intent of Congress to alter significantly prior law in this area.

As shown above, the prior law, including the case law before the 1967 amendments to the Bankruptcy Act, treated new contracts reasonably necessary to the debtor's business as administrative expenses upon conversion.

The reason why Congress chose not to include newly entered (and thus un-assumed) contracts within the literal scope of § 365(g), and thus in effect returned the law to its pre-1967 state, also seems evident. By requiring the court to determine the reasonable necessity of the newly entered contract under § 503(b), Congress has insured some judicial control over the determination of what executory contracts will be granted administrative expense priority. The Code, in order to streamline reorganization procedure, allows a debtor in possession to enter into contracts in the ordinary course of business without seeking court approval.[8] Thus, contracts initially entered into during reorganization, unlike contracts assumed during reorganization, will not

7. A few examples may help to clarify this point. A typical § 365(g)(2)(B)(ii) case would involve a trustee, after the conversion of a Chapter 11 to a Chapter 7 case, assuming a pre-petition executory contract and then breaching (rejecting) it. The breach would be deemed to have taken place at the time of rejection. The same subsection would also appear to cover the situation where a debtor in possession enters into an executory contract during the Chapter 11, the Chapter 11 is converted to a Chapter 7, the trustee assumes the contract, but thereafter rejects (breaches) it. Again the breach is deemed to have taken place as of the date of the rejection and does not constitute a pre-petition breach.

A typical § 365(g)(2)(B)(i) case would involve a debtor in possession assuming a pre-petition executory contract, the Chapter 11 being converted to a Chapter 7, and the trustee rejecting the executory contract. The breach is deemed to have taken place immediately before the conversion. In this last example there is no logical reason for there to be any different result if the debtor in possession had reasonably entered into a post-petition contract rather than assumed a pre-petition executory contract, although such a post-petition fact pattern does not fit the wording of the statute. As we have seen, under subsection (2)(B)(ii) it would not appear to make any difference whether we were dealing with a post-petition or pre-petition executory contract. Thus, a post-petition executory contract reasonably entered into by

a debtor in possession and then rejected by a trustee after a conversion of the case to Chapter 7 should receive the same treatment as is ultimately afforded to § 365(g)(2)(B)(i) contracts assumed by a debtor in possession: entitlement to payment as an administrative priority subordinate to the costs and expenses of the Chapter 7 liquidation.

8. 11 U.S.C. § 363(c)(1) reads:

If the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 1108 reads:

Unless the court orders otherwise, the trustee may operate the debtor's business.

11 U.S.C. § 1107(a) reads:

Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3) and (4) of this title, of a trustee serving in a case under this chapter.

have undergone court scrutiny.[9] By limiting automatic administrative expense treatment under § 365(g) to assumed contracts, and by requiring initially entered contracts to qualify under § 503(b) in order to be granted an administrative expense priority, Congress has insured both similar treatment and similar procedural safeguards for these fundamentally similar obligations.

Additionally, the policy of Chapter 11 of the Code supports this Court's interpretation of the intent of Congress to continue to treat both assumed and reasonably entered into preconversion executory contracts as administrative expenses. It is the purpose of Chapter 11 to prevent those liquidations that are avoidable, thus rehabilitating the debtor and ensuring more substantial satisfaction of creditors.[10]  *In re Heatron, Inc.*, 6 B.R. 493, 496, 6 B.C.D. 1008 (Bkrtcy.W.D.Mo.1980); *Matter of Aurora Cord & Cable Co.*, 2 B.R. 342, 346–347, 5 B.C.D. 1310, 1 C.B.C.2d 486, CCH Bkr. L.Rptr. ¶ 67,446 (Bkrtcy.N.D.Ill.1980); *In re Steak Loft of Oakdale, Inc.*, 10 B.R. 182, 185, 4 C.B.C.2d 45, 7 B.C.D. 524, CCH Bkr.L.Rptr. ¶ 67,965 (Bkrtcy. E.D.N.Y.1981); *Cf. G. F. Wertime, Inc. v. Turchik*, 358 F.2d 802, 806 (2nd Cir. 1966) (interpreting Chap. X of the Bankruptcy Act of 1898). But there would be little chance of attracting potential customers or creditors to deal with a financially troubled debtor if the performance of the debtor's obligations to those entities was not somehow assured. As indicated above, the legislative history of the Code nowhere suggests that Congress intended to eliminate the longstanding use of the administrative expense priority to implement the policy that underlies Chapter 11 reorganizations.

In summary, this Court holds that it was the intent of Congress to treat executory

contracts reasonably entered into by a debtor in possession under Chapter 11 and later rejected after conversion to Chapter 7, as administrative expenses pursuant to § 503(b), entitled to priority pursuant to § 507(a)(1). An order has been entered directing the trustee to disburse to Silver King an amount equal to twenty-five percent of its deposit, with any further payment to await the hearing on the trustee's final account.

---

9.  11 U.S.C. § 365(a) insures court scrutiny of assumed executory contracts by requiring as follows:

> Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

10.  And in the case of businesses liquidating under Chapter 11, the policy basis is to provide for a controlled liquidation that will more likely maximize the amount to be paid on creditors' claims than would a liquidation under Chapter 7. The continued operation of the debtor's business for a period of time may be an important part of a Chapter 11 liquidation.