In re MERRY–GO–ROUND ENTERPRISES, INC., MGR Distribution Corporation, and MGRR, Inc., and Almeda Chess King, Inc., et al., Debtors.

Bankruptcy Nos. 94–5–0161–SD thru 94–5–0163–SD, and 94–5–3774–SD.

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

May 16, 1997.

638

Deborah H. Devan, Neuberger, Quinn, Gielen, Rubin & Gibber, Baltimore, MD, Chapter 7 Trustee.

Joel I. Sher, Richard M. Goldberg, Shapiro and Olander, Baltimore, MD, for Chapter 7 Trustee.

Joyce A. Kuhns, Shoshana Katz, Weinberg & Green, L.L.C., Baltimore, MD, for Simon DeBartolo Group Landlord.

Karen H. Moore, Asst. U.S. Trustee, Office of U.S. Trustee, Baltimore, MD.

*SUPPLEMENTED MEMORANDUM OPINION PARTIALLY SUSTAINING TRUSTEE'S OBJECTIONS TO LAND- LORD'S CLAIM FOR CUTLER RIDGE MALL LEASE TERMI- NATION*

E. STEPHEN DERBY, Bankruptcy Judge.

### I. Issue.

The issue for resolution is how a landlord's claim under a postpetition Chapter 11 lease should be treated when the Trustee rejects the lease after conversion to Chapter 7. The landlord has filed a Chapter 7 administrative claim for the damages arising from the Chapter 7 Trustee's breach of its nonresidential lease, and the Trustee has objected to the claim being classified as administrative.

### II. Facts.

Merry-Go-Round Enterprises, Inc. ("MGRE"), the Debtor, was the lessee of hundreds of retail locations. MGRE's unsuccessful reorganization effort under Chapter 11 ended when this court converted the case to one under Chapter 7 on March 1, 1996. While it was operating in Chapter 11, MGRE entered into a lease with the Simon DeBarto- lo Group ("Landlord") for retail premises at Cutler Ridge Mall, with the approval of the court. The Order approving the lease was entered on April 24, 1995, and it reads, in relevant part:

> ... and finding that the lease is a post- petition lease entered into in the ordinary course of the Debtor's business pursuant to 11 U.S.C. Sec. 363(c)(1), and for good cause, it is by the Court hereby
>
> ORDERED that the Lease be, and the same hereby is, APPROVED.

A month before this case was converted to Chapter 7, MGRE determined that its reor- ganization efforts had been unsuccessful, and it undertook in Chapter 11 to commence liquidation through a going-out-of-business ("G.O.B.") sale from hundreds of its retail locations. In recognition of objections raised by several landlords, the following OR- DERED paragraphs were included in the court's February 22, 1996 Order approving the G.O.B. sale.

ORDERED that, without prejudice to other claims and statutory rights of landlords, Debtors [MGRE] shall pay timely all rent and other charges due under the leases for the period commencing February 1, 1996, and continuing until such time as the Debtors and/or the agent are no longer conducting G.O.B. sales on the premises; and it is further

\*　　\*　　\*　　\*　　\*　　\*

ORDERED that this Order shall be binding upon any subsequent trustee appointed under either Chapter 11 or Chapter 7 of the Bankruptcy Code.

The Cutler Ridge Mall store was one of the stores included within the scope of this Order.

After conversion of this case to Chapter 7, upon motions by landlords to compel payment of rent by the Trustee, the court ordered pursuant to 11 U.S.C. § 365(d)(3) "that the Trustee shall timely perform the monthly rent obligations, but on an apportioned biweekly basis, for the 60 day postconversion period though April 30, 1996 for Debtor's nonresidential, assumed and postpetition leases."

Thereafter, on March 29, 1996, the court entered an order authorizing the Chapter 7 Trustee to conduct a sale by auction of MGRE leases on terms that would benefit the estate. A recital to that order was that the objections of certain landlords to the auction was mooted because, in part, "[t]he Trustee has previously represented to this court that she will pay the rent on those leases that had been assumed by the Debtor or entered into postpetition, . . . ."

The final order that is material was entered on April 30, 1996 on the emergency motion by the Chapter 7 Trustee to extend the period to assume or reject certain unexpired leases of nonresidential real property. The Order included the following decretal paragraphs:

ORDERED, that the time within which to assume or reject the Unaffected Leases, as defined in the motion, shall be extended until December 31, 1996; and it is further

ORDERED, that the Trustee is obligated to timely perform all the obligations of the debtor, except those specified in Section 365(b)(2), arising from and after the conversion of this case to Chapter 7 under any unexpired, Unaffected Lease, until such lease is assumed or rejected; . . . .

The Unaffected Leases, as defined in the motion, included the subject Cutler Ridge Mall lease.

The Trustee's efforts to sell the Unaffected Leases were unsuccessful, and she has advised the court that on differing dates after the extension order "the Trustee has affirmatively rejected all the Assumed and Post-Petition Leases." P. 5233. The Landlord does not contest that the Trustee has turned over to it the Cutler Ridge Mall premises.

### III. Discussion.

Both the Trustee and the Landlord advance arguments based upon statutory construction of several related Bankruptcy Code provisions, and each urges that the plain meaning of the Code provisions on which the party relies be adopted by the court. As stated by the Supreme Court: "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

#### A. The Trustee's Position.

In support of her objection, the Trustee contends that the Landlord's rejection claim should be treated as a prepetition unsecured claim that is subject to the cap on lease termination damages in 11 U.S.C. § 502(b)(6). The Trustee develops this conclusion by first referring to 11 U.S.C. § 348(c).[1] Section 348(c) provides in relevant part that Section 365(d) applies in a case that has been converted under section 1112, and that it applies "as if the conversion order were the order for relief." This case was converted from Chapter 11 to Chapter 7 under Section 1112.

---

**1.** All section references are to 11 U.S.C., unless otherwise cited.

The Trustee then refers to Section 365(d)(4) for the proposition that if an unexpired lease of nonresidential real property is not assumed by the trustee within 60 days after the order for relief, it is deemed rejected. The relevant portion of Section 365(d)(4) on which the Trustee relies reads as follows:

... if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, with such 60–day period, fixes, then such lease is deemed rejected, ....

Turning next to Section 348(d), the Trustee reasons that a claim that arises after the petition was filed, but before conversion, should be treated as a prepetition claim. Section 348(d) provides:

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 ..., other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

Section 365(g)(1) provides in relevant part that "... the rejection of an ... unexpired lease of the debtor constitutes a breach of such ... lease—(1) if such ... lease has not been assumed ..., immediately before the date of the filing of the petition; ...." The date of the filing of the petition is not changed by the conversion of the case. 11 U.S.C. § 348(a). Further, Section 502(g) provides that "[a] claim arising from the rejection, under section 365 ... of an ... unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection ... (b) ... of this section or disallowed ... the same as if such claim had arisen before the date of the filing of the petition." Therefore, the Trustee asserts that the Landlord's lease rejection claim is a prepetition, general unsecured claim.

Referring next to Section 502(b)(6) that sets a cap on a lessor's damages from the termination of a lease of real property, the Trustee argues that Section 502(b)(6) does not contain a limitation on its applicability based on when the lease was executed or commenced. Therefore, the Trustee maintains that the cap should apply equally to a prepetition lease and to a postpetition lease that has been rejected postconversion.

 A fatal flaw in the Trustee's statutory analysis is that by their terms Sections 365(d)(4) and 365(g)(1) apply only to leases entered into by the debtor. The subject lease was entered into by the debtor in possession. The debtor means a person "concerning which a case under this title [the Bankruptcy Code] has been commenced." 11 U.S.C. § 101(13). A debtor in possession, on the other hand, is a person that only comes into existence when a Chapter 11 case is filed. While the debtor in possession is defined to mean the debtor, the definition applies only "[i]n this chapter [11]." *Id.* at § 1101(1). This case is now in Chapter 7, and in Chapter 7 the subject lease is not a lease of the debtor, but rather it is a lease of the debtor in possession, before conversion.

 Additionally, Section 348(d) in treating postpetition claims in a converted case as arising immediately prepetition expressly excludes administrative claims under Section 503(b). If the Landlord's lease termination claims are administrative, then they cannot be treated as arising prepetition. Similarly, Section 502(b)(6), which establishes the cap on lease termination damages, is an objection to a claim filed under Section 501; and Section 501 provides only for the filing of prepetition claims. As a matter of statutory construction, Section 502(b)(6) does not apply to postpetition administrative claims.

The Trustee argues in the alternative that Section 365(g)(2)(B)(i) should be applied and that the Trustee's rejection of the lease constitutes a breach of the lease immediately before the conversion from Chapter 11 to Chapter 7. This section provides, as relevant:

(g) ... the rejection of an ... unexpired lease of the debtor constitutes a breach of such ... lease—

\*　　\*　　\*　　\*　　\*　　\*

(2) if such ... lease has been assumed under this section or under a plan confirmed under chapter ... 11, ...—

\* \* \* \* \* \*

(B) if before such rejection the case has been converted under section 1112, ...—

(i) immediately before the date of such conversion, if such ... lease was assumed before such conversion;....

The contention of the Trustee is that, upon conversion to Chapter 7, a postpetition Chapter 11 lease should be treated the same substantively as an assumed lease. The Trustee's reasoning has garnered some support from the recent opinion in *In re Lamparter Organization*, 207 B.R. 48 (E.D.N.Y. 1997), which also addressed the status of a postconversion future rent claim arising from a postpetition lease. In *Lamparter* the court reasoned that a postpetition lease and an assumed prepetition lease were the functional equivalent of each other in holding that the future rent claims were entitled to administrative priority. *Id.* at 51–52.

The Trustee's alternative argument fails as a matter of statutory interpretation, however, because Section 365(g)(2) by its express terms only applies to leases that have been assumed, and Section 365(g)(2) is not expressly applicable to leases entered into post-petition by a debtor in possession. It would defy the section's plain meaning to apply it by analogy and to treat postpetition leases as assumed leases, as urged by the Trustee. Such an application by analogy would also ignore the language in Section 365(g) that makes the subsection applicable only to an unexpired lease of the debtor, and does not include an unexpired lease of a debtor in possession. The court in *Lamparter* was only faced with the issue whether the future rent claim was entitled to administrative priority status, and not, as here, whether the claim was entitled to administrative priority status under Chapter 7 or under Chapter 11.

B. *The Landlord's Position.*

█ In support of its claim that the Trustee's breach of the Cutler Ridge Mall lease created a Chapter 7 administrative expense, the Landlord first argues that prior orders of the court had the effect of making the lease obligation for the entire lease term a Chapter 7 administrative expense. The court rejects this extension of the language of its orders. The February 22, 1996 order required MGRE to pay timely all rent and charges due from February 1, 1996 until the G.O.B. sales were concluded. Making this limited requirement binding on a subsequent trustee did not expand the obligation to include future rent, and it did not alter the character of the claim.

█ The subsequent orders that the Trustee timely perform monthly rent obligations under postpetition leases first through April 30, 1996 and then until such lease was rejected were not the functional equivalent of a court ordered assumption of the postpetition leases by the Chapter 7 Trustee. They did not constitute an implied declaration that all claims arising from these leases would be granted Chapter 7 priority status. Rather, these orders did no more than recognize a Chapter 7 administrative expense obligation of the Trustee to pay rent for the period she controlled particular premises to the exclusion of the respective landlords. The court did not otherwise restrict the rights of the Trustee under either the Bankruptcy Code or nonbankruptcy law, nor did the court classify the resulting claims of landlords. The Trustee's representation that she would pay the rent on postpetition leases similarly was only that she would continue to pay rent on postpetition leases until a lease was sold or the premises were returned to a landlord. Her undertaking was not understood by the court to mean more than that she could and would pay current rent.

The Landlord's second argument is based upon the plain meaning of sections of the Bankruptcy Code. Section 365(a) grants the Trustee the power to assume only leases "of the debtor". Since the Cutler Ridge Mall lease was a lease entered into postpetition by the debtor in possession, and since it was not an assumed lease, the Landlord reasons that neither Section 365(d) nor 365(g) are applicable; and the Trustee's purported rejection of the lease did not create a prepetition claim, but rather constituted a postpetition breach.

As a breach by the Trustee during administration of the Chapter 7 case, the Landlord asserts that its damage claim for the breach is a Chapter 7 administrative claim, with priority over Chapter 11 administrative claims. 11 U.S.C. §§ 503(b), 507(a)(1), 726(b).

█ The Landlord's argument carries too far. Merely because the Chapter 7 Trustee did not perform the Cutler Ridge Mall lease that was entered into postpetition, but preconversion, by MGRE as debtor in possession does not mean such failure created a Chapter 7 administrative damage claim for breach of the lease. For the Landlord's claim to constitute a Chapter 7 administrative claim, first, the claim must have arisen out of a postconversion transaction between the Landlord and the Chapter 7 Trustee, and second, the consideration provided by the Landlord must (a) have been supplied to the Chapter 7 Trustee and (b) have been beneficial to the Chapter 7 estate. See, *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 n. 2 (4th Cir.1995) (dicta). Only the rent due for the short period that the Chapter 7 Trustee used the Cutler Ridge Mall store for the G.O.B. sale safely passes this test.

The Landlord's future rent damage claim for breach of the Cutler Ridge Mall lease fails both prongs of the test for qualifying as a Chapter 7 administrative expense. First, the claim arises out of a lease transaction entered into by MGRE as debtor in possession during administration of the Chapter 11 case, and not by the Trustee. Second, the consideration supplied by the Landlord was the lease to MGRE for the benefit of the Chapter 11 estate. The lease was not supplied to the Chapter 7 Trustee, and the lease contract was not beneficial to the Chapter 7 estate. This Chapter 7 Trustee did not even have the power under Section 365 to assume and assign the Landlord's postpetition lease.

### C. *The Court's Resolution.*

To assist a debtor's reorganization efforts in a Chapter 11 case, the Bankruptcy Code fosters two objectives for dealing with leased premises. First, claims for future rent arising from the breach by rejection of undesirable prepetition leases are capped. 11

U.S.C. § 502(b)(6). This cap moderates the distorting effect of future rent claims arising from long term leases on other unsecured creditors. Second, as an incentive to deal with a debtor in possession, a landlord that enters into a new lease postpetition and thereby benefits the estate or the reorganization effort is granted an administrative priority for its claims. 11 U.S.C. §§ 507(a)(1), 503(b)(1)(A). See *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 20, 22–28 (2nd Cir. 1996) (lease was assumed postpetition).

█ Leases entered into postpetition are not subject to subsequent rejection under Section 365. *In re Leslie Fay Companies, Inc.*, 168 B.R. 294, 300 (Bankr.S.D.N.Y.1994); *In re Airport Executive Center, Ltd.*, 138 B.R. 628, 629 (Bankr.M.D.Fla.1992). *Accord, In re Cannonsburg Environmental Assoc., Ltd.*, 72 F.3d 1260, 1265–66 (6th Cir.1996) (Chapter 11 Trustee could compel third party to honor postpetition loan commitment to debtor in possession, and Section 365(c)(2) was not applicable because it applies only to prepetition loans.). By its express terms Section 365 may only be invoked for leases "... of the debtor." 11 U.S.C. § 365(a).

█ The Trustee's purported rejection of the Cutler Ridge Mall lease resulted in a breach of the lease. For the postpetition breach of its postpetition lease, the Landlord has an administrative claim. *In re Chugiak Boat Works, Inc.*, 18 B.R. 292, 296–297 (Bankr.D.Alaska, 1982) (contract to purchase boat to be manufactured by the debtor in possession). The unresolved issue created by the Trustee's breach, however, is whether the administrative claim is a Chapter 7 or a Chapter 11 administrative claim. The key to answering this question is found in the different nature and function of a Chapter 11 proceeding and a Chapter 7 proceeding. During a reorganization effort in Chapter 11, the focus is on continuing the debtor in possession in business with the goal of realizing ongoing business values through a successful reorganization. The Cutler Ridge Mall lease was perceived as furthering that purpose at the time it was entered into by MGRE. In Chapter 7 after conversion, however, the goal is to liquidate the business and, in the pro-

cess, to preserve the estate. The Cutler Ridge Mall lease, as previously noted. did not serve this purpose.

The Landlord's future rent claim for breach of the Cutler Ridge Mall lease is a Chapter 11 administrative expense. It satisfies the determinative criteria because it arises out of a transaction between MGRE as debtor in possession and the Landlord, namely, the lease, and because the consideration supporting the claim in the form of the Cutler Ridge Mall lease " 'was both supplied to and beneficial to the debtor in possession in the operation of the business.' " *Trustees of Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986), quoting from *In re Mammoth Mart, Inc.,* 536 F.2d 950, 953 (1st Cir.1976) and cited authoritatively in *Stewart Foods,* 64 F.3d at 145 n. 2.

 When determining what is the proper classification for a future rent claim for breach of a lease postpetition, the benefit to the estate is measured when the lease became binding. *See, Klein Sleep,* 78 F.3d at 24–26. This is commonly when, with court approval, a trustee or debtor in possession assumes an existing lease of the debtor or enters into a new lease. *Id.* The motion on which this court's approval of the Cutler Ridge Mall lease was based contained a representation by MGRE that "[t]he Debtors have determined, in their business judgment, that it is in the best interest of the estates and creditors to seek Court approval of the Lease." P. 3223, ¶ 5. In context, MGRE's motivation for entering into the Cutler Ridge Mall lease postpetition was to further its reorganization efforts. No committee or creditor dissented.

The result reached here is not at odds with the result *In re Jamesway Corp.,* 202 B.R. 697 (Bankr.S.D.N.Y.1996). In *Jamesway* the court concluded that leases assumed under a debtor's confirmed Chapter 11 plan could be rejected under Section 365 as prepetition leases in a second Chapter 11 case filed by the debtor. The landlord's future rent claims were denied administrative expense priority in the second case. In so doing, the *Jamesway* court recognized that the first and second cases had created separate bankrupt-

cy estates. Because the actual benefit from the leases was not to the estate in the second case, the rejection damages were not entitled to administrative priority status. See *id.* at 700–702.

The conclusion that the Chapter 7 Trustee's postconversion breach of the Cutler Ridge Mall lease constitutes a preconversion Chapter 11 administrative expense is also consistent with prior practice under the Bankruptcy Act. The U.S. Supreme Court has cautioned that the Bankruptcy Code should not be read to alter practice under the Bankruptcy Act in the absence of specific statutory language, preferably accompanied by legislative history supporting the change. *United Savings v. Timbers of Inwood Forest,* 484 U.S. 365, 380, 108 S.Ct. 626, 635, 98 L.Ed.2d 740 (1988); *Ron Pair Enterprises,* 489 U.S. at 242–246, 109 S.Ct. at 1030–33; *Klein Sleep,* 78 F.3d at 27–28. The Bankruptcy Act expressly made the damages for breach of a postpetition contract in a converted case an administrative claim in the preconversion case. The following identical language was included in Chapter X (corporate reorganizations), Chapter XI (arrangements) and Chapter XII (real property arrangements).

> ... When a contract entered into or assumed in a superseded proceeding is rejected, the resulting liability shall constitute a cost of administration of the superseded proceeding.

Bankruptcy Act §§ 238(b) (Ch. X), 378(b) (Ch. XI), 483(b) (Ch. XII); 81 Stat. 511 (1967). See *Chugiak Boat Works,* 18 B.R. at 295.

There is no statutory language in the Bankruptcy Code that specifically alters this rule for postpetition contracts. While Section 365(g)(2) expressly addresses rejection of a lease of the debtor that has been assumed and is later rejected, comparable language is not included for postpetition contracts of a debtor in possession. This apparent omission is not startling because allowing the classification of claim for future rent under a postpetition lease to be determined by the benefit provided by the lease is consistent with the determination of other administrative claims.

A final point is that the Section 502(b)(6) cap on future rent claims does not apply to administrative expense claims of a landlord. *Klein Sleep*, 78 F.3d at 28–29. By its terms, Section 502 applies only to prepetition claims under Section 501, and not to Section 503 administrative claims. 11 U.S.C. § 502(a). Further, legislative history recites that Section 502(b)(6) "... does not apply to limit administrative claims for use of leased premises to which the landlord is otherwise entitled." Sen. Rep. No. 95–989, 95th Cong., 2d Sess. 63 (1978), U.S. Code Cong. & Admin. News 1978, 5787, 5849. The policy reasons for capping future rent claims for prepetition leases to modify the distortion effect on other unsecured creditors also are inapplicable to an administrative expense claim that is incurred postpetition in furtherance of the reorganization effort. Rather, the policy of providing an incentive for a landlord to deal with the debtor in possession postpetition by granting it an administrative priority is more important. Since the Section 502(b)(6) cap is not applicable, the Landlord's future rent claim should be determined in accordance with applicable state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *Accord, In re Merry–Go–Round Enterprises, Inc.*, 1996 WL 69688 (Bankr.D.Md.1996). Finally, while Section 502(g) would expressly make Section 502(b) applicable, it requires as a predicate a rejection under Section 365. Since Section 365 is inapplicable here, Section 502(g) does not trigger Section 506(b).

### IV. Conclusion.

The Cutler Ridge Mall lease was entered into postpetition by MGRE, as debtor in possession. Neither Section 365 nor Section 502(b)(6) apply to leases entered into postpetition. Therefore, the Landlord's future rent claim arising from the Chapter 7 Trustee's postconversion rejection of the Cutler Ridge Mall lease is neither a prepetition claim nor is it capped. Rather, it is an administrative claim for breach of the lease to be determined by application of state law.

Because the Landlord's future rent claim arises from a lease entered into by the debtor in possession during administration of its Chapter 11 case, and because the lease's benefits were provided to and for the debtor in possession, it constitutes a Chapter 11 administrative expense. The Landlord's Chapter 7 administrative claim is limited to the unpaid rent due for the period during which the Chapter 7 Trustee used the premises for the estate's benefit to the exclusion of the Landlord to conduct the G.O.B. sale and to offer the lease for sale, albeit unsuccessfully. This amount is what the court previously ordered the Trustee to pay.

Since the Landlord's claim does not make such a distinction, the Trustee's objection to the Landlord's Chapter 7 administrative expense claim will be sustained. The Landlord's claim will be allowed as a Chapter 11 administrative claim, with leave to amend to allocate a portion of the claim as a Chapter 7 administrative expense in accordance with this opinion.