Present:  Carrico, C.J., Compton, Stephenson, Lacy, Keenan, and Koontz, JJ., and Cochran, Retired Justice

HERMAN L. COURSON,
ET AL.

v.  Record No. 951295    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        March 1, 1996
MARGARET N. SIMPSON,
TRUSTEE, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Rosemarie P. Annunziata, Judge

In this appeal, we consider whether a surety was discharged from its obligation by Code §§ 49-25 and -26,[1] after giving written notice to the creditor to institute suit against a debtor corporation which the surety concedes was insolvent.

In 1981, Springfield Associates, Inc. borrowed $28,460.50 from a trust established by the estate of Robert C. Nicoll (the

---

[1]Code § 49-25 provides, in relevant part:

The surety . . . of any person bound by any contract may, if a right of action has accrued thereon, require the creditor . . . by notice in writing, to institute suit thereon . . . .  Such written notice shall also notify the creditor . . . that failure to act will result in the loss of the surety . . . as security for the debt in accordance with § 49-26.

Code § 49-26 provides, in relevant part:

If such creditor . . . shall not, within thirty days after such requirement, institute suit against every party to such contract who is resident in this Commonwealth and not insolvent and prosecute the same with due diligence to judgment and by execution, he shall forfeit his right to demand of such surety . . . the money due by any such contract for the payment of money, or the damages sustained by any breach of the collateral condition or undertaking specified as aforesaid; but the conditions, rights and remedies against the principal debtor shall remain unimpaired thereby.

Nicoll trust). The loan was secured by a deed of trust on the personal residence of Eleanor E. and Herman L. Courson. Mr. Courson was vice president and one of the principal stockholders of Springfield Associates, Inc. However, neither he nor Mrs. Courson was a party to the original note establishing the debt.

The following words were typed above the original note, "secured by a deed of trust on Lot Three (3), West Hill Subdivision, Fairfax County, Virginia." No reference to the deed of trust was included in the body of the note.

In a 1984 letter, Springfield Associates, Inc., Carl H. Hellwig, president of Springfield Associates, Inc., and Herman L. Courson acknowledged to Robert F. Silver, one of the co-trustees of the Nicoll trust, that the corporation owed money to the Nicoll trust, and that the Courson deed of trust secured performance of the corporate note. Later, Springfield Associates, Inc. defaulted on the note.

In 1987, the Coursons attempted to obtain a release of the deed of trust on their residence. On January 19, 1987, they assigned to The George Mason Bank (the Bank) a sum sufficient to pay the note. The Coursons directed that the assignment would terminate only on fulfillment of one of three conditions: (1) entry of a court order on behalf of the Nicoll trust against Springfield Associates, Inc. and payment by the Bank from the proceeds of the assignment in discharge of the obligation; (2) foreclosure under the Coursons' deed of trust and payment by the

Bank from the assigned funds an amount necessary to discharge the lien of the deed of trust; or (3) entry of a court order declaring that the Coursons' obligation with respect to the note was discharged, and that the deed of trust was released.

Also on January 19, 1987, the Coursons sent a letter, by certified mail, to Margaret N. Simpson, whom they believed to be the sole surviving trustee of the Nicoll trust.[2] The letter informed Simpson that the Coursons had assigned a sum sufficient to discharge the full indebtedness on the note of Springfield Associates, Inc. The letter also stated that if Simpson did not institute suit for breach of the obligation of Springfield Associates, Inc., the Coursons' obligation under the deed of trust would be released, pursuant to Code §§ 49-25 and -26.

Simpson did not file suit on the note. The Coursons then filed a bill of complaint for declaratory judgment, asking the trial court to declare that the deed of trust was released by

_____

[2]When the trust was established, Silver and Simpson were co-trustees. Silver died in 1985. In August 1985, the Alexandria Circuit Court appointed Gordon P. Peyton as substitute trustee. This substitution, however, was not recorded in the fiduciary records in the Alexandria Circuit Court. In resolving the issues presented, we will assume, without deciding, that the January 19, 1987, notice to Simpson constituted sufficient notice to Peyton and to the Nicoll trust.

operation of Code §§ 49-25 and -26. Simpson was served personally with the bill of complaint, but did not file an answer. In May 1987, a final decree was entered by default, releasing the deed of trust and extinguishing the Coursons' obligation as sureties. Thereafter, the Bank released the assigned funds back to the Coursons.

In July 1987, Gordon P. Peyton, one of the two co-trustees of the Nicoll trust, filed a motion to intervene, and Simpson filed a motion to set aside the May 1987 decree. The trial court granted both motions.[3]

The Coursons filed an amended bill of complaint against Christopher A. Nicoll and Lynne Nicoll Fuller, the beneficiaries of the Nicoll trust (the beneficiaries), Simpson, and Peyton. Simpson and Peyton (the trustees) did not respond to the amended bill, but the beneficiaries did file an answer.

At trial, the uncontroverted evidence showed that Springfield Associates, Inc. was insolvent. Mr. Courson testified that, at the time he sent the demand letter to Simpson, he knew that Springfield Associates, Inc. had no assets. In addition, the evidence showed that the Coursons were not personally liable on the note of Springfield Associates, Inc.

The trial court denied the Coursons' request for declaratory judgment relief. The court held that, because the sole principal

---

[3]These rulings are not assigned as error in this appeal.

debtor on the note was insolvent, Code § 49-26 did not release the Coursons from their obligation under the deed of trust.  In addition, the court held that Code § 49-26 did not require the trustees to institute suit against the Coursons as sureties after Simpson received the Coursons' demand, but only required the trustees to sue any solvent principal debtors.  This appeal followed.

The issues before us are ones of first impression.  The Coursons first contend that, although Springfield Associates, Inc. was insolvent, the corporation was "not insolvent for the purposes of this specific debt," because the Coursons had assigned sufficient funds to discharge the obligation of Springfield Associates, Inc.  Second, the Coursons argue that Code § 49-26 required the trustees to sue every party to the transaction, including the surety, after receiving a demand notice from the surety under Code § 49-25.  Therefore, according to the Coursons, since the trustees did not institute suit against them after receiving their January 19, 1987, letter, Code § 49-26 extinguished the Coursons' liability as surety.  We disagree with both contentions.

Initially, we note that a surety makes a direct promise to perform an obligation in the event the principal debtor fails to perform.  As between the principal debtor and the surety, the ultimate liability rests on the principal debtor, but the creditor has a remedy against both.  First Virginia Bank-Colonial

- 5 -

v. Baker, 225 Va. 72, 77, 301 S.E.2d 8, 11 (1983); see also Restatement of Security § 82 (1941).

Code § 49-25 allows a surety to require a creditor to institute suit against the principal debtor if a right of action has accrued on the principal debtor's obligation.  Code § 49-26 provides that, if the creditor fails to institute such suit within thirty days of the written demand notice sent by the surety, the surety's obligation to the creditor is discharged.

However, the creditor's obligation to sue is not absolute. Code § 49-26 requires a creditor to bring suit against a principal debtor only if that debtor is "not insolvent."  A debtor is insolvent, within the meaning of Code § 49-26, when it has insufficient property to pay all its debts.  See Hudson v. Hudson, 249 Va. 335, 340, 455 S.E.2d 14, 17 (1995); McArthur v. Chase, 54 Va. (13 Gratt.) 683, 694 (1857).

The evidence showed that Springfield Associates, Inc. was an insolvent corporation when the Coursons sent the demand letter. As stated above, Mr. Courson's testimony established that Springfield Associates, Inc. had no assets when the demand letter was sent.

The Coursons have not cited, and we have not found, any authority to support their contention that a corporation simultaneously can be insolvent and yet "solvent for purposes of a specific debt."  We find no merit in the Coursons' contention, because Code § 49-26 refers only to the solvency of the party to

the contract, not to any single debt on which that party is obligated. Thus, since the sole principal debtor on the note, Springfield Associates, Inc., was insolvent, Simpson was not required by Code § 49-26 to sue that debtor.

We next address the Coursons' contention that the January 19, 1987, demand letter required the trustees to institute suit against the Coursons, as well as against Springfield Associates, Inc. The Coursons urge us to adopt the majority holding in Colonial American National Bank v. Kosnoski, 617 F.2d 1025, 1027 (4th Cir. 1980), in which the Court of Appeals ruled that the term "every party" in Code § 49-26 includes the surety. We decline to do so.

A surety relationship is based on two separate contractual obligations. The first contract establishes the debt between the principal debtor and the creditor. The second contract, between the surety and the creditor, secures the principal debt. See Bourne v. Board of Supervisors of Henrico County, 161 Va. 678, 684, 172 S.E. 245, 247 (1934). In considering whether the Coursons are entitled to the remedy of discharge under Code § 49-26, we must determine which contract is referenced in that statute.

Code § 49-26 requires a creditor, who receives a notice to institute suit pursuant to that section, to sue "every party to such contract who is resident in this Commonwealth and not insolvent." (Emphasis added.) The antecedent to the term "such

contract" is found in Code § 49-25, which states that "the surety
. . . of any person bound by any contract may, if a right of
action has accrued thereon, require the creditor . . . to
institute suit."  (Emphasis added.)

This language in Code § 49-25 indicates that the contract on
which the creditor must institute suit is the contract by which
the principal debtor is bound, not the contract by which the
surety is bound.  Thus, Code § 49-26 obligates the creditor, on
proper demand by the surety, to institute suit against any
principal debtor who is not insolvent.  This section does not
obligate the creditor to bring suit against the surety in order
to prevent the surety from obtaining a discharge under the
statute.[4]

Here, the contract which bound the principal debtor was the
1981 note between Springfield Associates, Inc. and the Nicoll
trust.  Thus, the only contract on which the trustees would have
been obligated to institute suit, pursuant to the Coursons'
demand letter, was the note between Springfield Associates, Inc.
and the Nicoll trust.  As stated above, the insolvency of

_____

[4]As Kosnoski addresses, the predecessor statute to Code §
49-26, originally enacted in 1794, was amended in 1849 to include
the phrase "every party."  617 F.2d at 1027.  We believe that the
intention of this amendment was to require the creditor to bring
suit against every party to the principal debt.

- 8 -

Springfield Associates, Inc. eliminated this requirement. Further, since the Coursons were not personally liable on that note, the trustees had no obligation to sue them.

We disagree with the Coursons' contention that the trial court erred by failing to take the amended bill of complaint as confessed to the trustees. Although the trustees were sued in their representative capacity for the Nicoll trust, its beneficiaries had timely answered the amended bill of complaint. The beneficiaries were entitled to assert every position that the trustees were entitled to assert. Thus, we find no error in the trial court's decision not to enter a default decree against the trustees.

We also find no merit in the Coursons' assertion that the 1984 letter to Robert F. Silver made the Coursons a party to the original contract between the Nicoll trust and Springfield Associates, Inc. That letter merely acknowledged the existing obligation of Springfield Associates, Inc. to the Nicoll trust, and the existing obligation of the Coursons to the Nicoll trust. Likewise, the Courson's deed of trust was not incorporated by reference into the note because the body of the note contained no reference to the deed of trust.

For these reasons, we will affirm the trial court's judgment.

<u>Affirmed</u>.

JUSTICE COCHRAN, with whom JUSTICE COMPTON and JUSTICE STEPHENSON join, dissenting.

I take a different view of this appeal.

The majority assumes, without deciding, that the January 19, 1987, notice from the Coursons to Margaret N. Simpson constituted sufficient notice to Gordon P. Peyton and to the Nicoll trust.  I consider this initial question to be highly significant in the appeal.  The Coursons presented evidence in the trial court sufficient to make a prima facie case that the required notice was given, and this evidence was not rebutted.  Accordingly, I would hold, rather than assume, that there was sufficient notice to Simpson, Peyton, and the Nicoll trust.

What then were the trustees, Simpson and Peyton, and the beneficiaries of the Nicoll trust (Nicoll and Fuller) required to do under the provisions of Code § 49-26?  According to the majority they were required to do nothing, because the principal debtor, Springfield Associates, Inc., was insolvent under the common definition of insolvency that its liabilities exceeded its assets.  It is undeniable, however, that they could have instituted suit against the principal debtor, even if insolvent, and recovered the full amount of the obligation for which the Coursons were sureties.  The Coursons had assigned to The George Mason Bank a sum sufficient to discharge the obligation in full, regardless of the financial status of the principal debtor.  I would hold that under these circumstances, the debtor was not insolvent as to this obligation, and the Coursons were entitled to have suit instituted against Springfield Associates, Inc.

Having eliminated the principal debtor as a target because of insolvency, the majority then concludes that there was no other party to the contract against whom suit must be instituted. To reach this conclusion the majority holds that the sureties were not parties to the contract between the principal debtor and the creditor, but were parties to a second contract securing the indebtedness. I disagree with this unduly restrictive interpretation of Code § 49-26. As a remedial statute, Code § 49-26 should be liberally construed for the benefit of sureties. Wright's Administrator v. Stockton, 32 Va. (5 Leigh) 153, 159 (1834); see Univ. of Virginia v. Harris, 239 Va. 119, 124, 387 S.E.2d 772, 775 (1990).

In Colonial American Nat'l Bank v. Kosnoski, 617 F.2d 1025 (4th Cir. 1980), a majority of the panel (Judges Bryan and Winter, Judge Murnaghan dissenting) ruled that the words "every party" in Code § 49-26 include sureties. The opinion pointed out that the original 1794 statute was amended in 1849 to substantially its present form to require a creditor to institute suit against every party to the contract who is resident in Virginia and not insolvent. The opinion noted that the amendment would have been unnecessary if the General Assembly had intended that the guarantor could demand suit only against the principal. I agree with this construction of Code § 49-26.

The note of Springfield Associates, Inc. dated September 30, 1981, in the principal sum of $28,460.50 states that it was

secured by a deed of trust on property identified as that of the Coursons. This reference, in my view, incorporated the deed of trust into the contract between principal and creditor. See <u>High Knob Assoc.</u> v. <u>Douglas</u>, 249 Va. 478, 487-88, 457 S.E.2d 349, 354-55 (1995).

Moreover, by letter dated May 9, 1984, Springfield Associates, Inc., and the Coursons reaffirmed the agreement, and the Coursons further verified that their residence remained as additional security "behind the corporate note."

Having concluded that the Coursons were parties to the contract in question, it follows that I would hold that they could and did demand that suit be instituted against them as sureties. No such suit was instituted and I would hold that the Coursons did what was required of them and are now entitled to relief under Code § 49-26. For these reasons, I would reverse the judgment of the trial court and enter final judgment in favor of the Coursons.