In re the **LAMPARTER ORGANIZATION, INC.**, Debtor.

**Mary ADAMOWICZ and the Estate of Michael Adamowicz, Appellants,**

v.

**Marc A. PERGAMENT, as Chapter 7 Trustee of The Lamparter Organization, Inc., Trustee–Appellee.**

No. 96 CV 2059(NG).

United States District Court, E.D. New York.

March 25, 1997.

---

**8.** This issue was neither briefed by the parties   nor considered by the bankruptcy court.

Douglas Pick, New York City, for Appellants.

Marc Pergament, Garden City, NY, for Trustee-Appellee.

## OPINION AND ORDER

GERSHON, District Judge:

The issue raised by this appeal under 28 U.S.C. § 158(a) is whether appellants' claim for future rent under a long-term lease en-

tered into with a Chapter 11 debtor in possession constitutes an administrative expense to be given priority at the time of the distribution of the bankrupt's estate. For the reasons set forth below, I conclude that the future rent claim is entitled to administrative expense priority. Accordingly, the portion of the bankruptcy court's decision holding that future rent constitutes only a general unsecured claim for damages is reversed; and the matter is remanded to the bankruptcy court for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS

On November 2, 1988, debtor and appellants entered into a five-year lease for property in Farmingdale, New York, where debtor set up the headquarters of its construction company. On May 12, 1992, more than a year before the expiration of the five-year lease, debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. Debtor, as debtor in possession,[1] continued to use and occupy its headquarters throughout its Chapter 11 proceeding, even after the expiration of the five-year lease on October 31, 1993.

In September 1994, debtor in possession and appellants negotiated a new, fifty-month lease agreement ("the 1994 lease") for the headquarters. Debtor in possession then, at appellants' insistence, sought an order from the bankruptcy court authorizing and approving the 1994 lease. After a hearing, the bankruptcy court issued an order authorizing debtor in possession to enter into the 1994 lease.

In May 1995, during the pendency of the 1994 lease, and after debtor in possession had defaulted on its rent obligations under that lease, the bankruptcy court converted debtor's case to one under Chapter 7 of the Bankruptcy Code and appointed an interim trustee of the Chapter 7 estate. In June 1995, the bankruptcy court issued an order approving trustee's retention of an auctioneer to liquidate the estate's physical assets.

---

**1.** Upon the filing of a Chapter 11 petition, the debtor became a debtor in possession. *See* 11 U.S.C. § 1101(1).

An auction sale of the assets was conducted, and appellants regained full possession of the property in question on July 7, 1995.

In January 1996, appellants asserted a Chapter 7 administrative expense claim and a Chapter 11 administrative expense claim against debtor's estate. The Chapter 7 administrative expense claim included unpaid rent, real estate taxes, and water and sprinkler costs owed from the date of the conversion to Chapter 7 to the date that appellants regained possession of the premises. The Chapter 11 administrative expense claim sought by appellants consisted of two parts. First, appellants asserted a Chapter 11 administrative expense claim for any unpaid rent owed from the date that the bankruptcy court approved the 1994 lease to the day before the conversion of the case to Chapter 7. Second, appellants sought as a Chapter 11 administrative expense claim the future rent arising from the breach of the 1994 lease.

On March 11, 1996, the bankruptcy court issued an order directing trustee to pay, first, the Chapter 7 administrative expense claim asserted by appellants and, second, a Chapter 11 administrative expense claim for the unpaid rent incurred by the debtor from the time of the approval of the 1994 lease to the date of the Chapter 7 conversion. However, the bankruptcy court rejected appellants' contention that they were entitled to a Chapter 11 administrative expense claim for future rent; instead, the bankruptcy court ruled that the future rent constituted a general unsecured claim for damages in accordance with 11 U.S.C. § 502(g). Appellants now challenge only the bankruptcy court's decision that future rent does not constitute an administrative expense claim.

## ANALYSIS

### Standard of Review

This court reviews the bankruptcy court's "conclusions of law de novo, and findings of fact under a clearly erroneous standard." *Shugrue v. Air Line Pilots Ass'n, Int'l,* 922 F.2d 984, 988 (2d Cir.1990), *cert. denied,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). The sole issue raised in this appeal is a legal issue, namely, whether appellants' claim for future rent constitutes an administrative expense to be given priority at the time of the distribution of the bankrupt's estate. The bankruptcy court's ruling on that issue will be reviewed de novo.

### Administrative Expense Priority

"According to 11 U.S.C. § 503(b)(1)(A), 'the actual, necessary costs and expenses of preserving the estate' constitute administrative expenses entitled to priority status upon distribution of the estate." *Nostas Assoc. v. Costich (In re Klein Sleep Prod., Inc.),* 78 F.3d 18, 22 (2d Cir.1996) ("*Klein Sleep*"). An expense is administrative "only if it arises out of a transaction between the bankrupt's trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *Trustees of the Amalgamated·Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986) (internal quotations and citations omitted).

### Klein Sleep

For the reasons set forth below, I am persuaded that the Court of Appeals' recent decision in *Klein Sleep,* 78 F.3d 18, governs the outcome of this case. The relevant facts of *Klein Sleep* are as follows: After filing for Chapter 11 relief, the *Klein Sleep* debtor in possession assumed, with court approval, an unexpired, pre-petition lease that it had entered into with its landlord. *Id.* at 21. Several months later, when it became clear that reorganization efforts had failed, the Chapter 11 trustee appointed to liquidate the estate rejected the lease and surrendered possession of the rental property to the landlord. *Id.*

The landlord then asserted a Chapter 11 administrative expense claim both for the unpaid rent that had accumulated between the assumption of the lease and its rejection, and for the future rent accruing after the rejection of the lease. *Id.* Like the bankruptcy court in the instant case, the district court in *Klein Sleep* gave priority administrative expense status to the unpaid rent owing on the lease, and general unsecured claim

status to the future rent arising after the rejection of the lease. *Id.* at 21–22. The landlord appealed, arguing that *all* liability resulting from the breach of the lease, including future rent, was entitled to administrative expense status. *Id.* at 21.

The Second Circuit in *Klein Sleep* was thus faced with the question of whether administrative expense status should be given to future rent claims arising from the rejection of a pre-petition lease that had been assumed by the debtor in possession with the approval of the bankruptcy court. Addressing this question, the Circuit recognized that it was required to choose between "two competing bankruptcy policies—promoting parity among creditors and yet granting priority to the claims of creditors who continue to do business with an insolvent debtor...." *Id.* at 20. The Circuit discussed those policies, particularly the grant of priority to creditors who do business with an insolvent debtor, in some detail:

> The liquidation provisions of the Bankruptcy Code ... distribute a pro rata share of a debtor's estate to each unsecured creditor so that similarly situated creditors may be treated alike....
>
> Bankruptcy law also aims to avoid liquidation altogether when that is possible. Although the Code offers no magical potion to restore a debtor's financial health, it does provide some useful medicine designed to help a debtor get back on its feet and heading toward convalescence. It does this by allowing a debtor to attempt to reorganize rather than fold and by creating incentives for creditors to continue to do business with the debtor while reorganization proceeds. The Code does this, at least in part, by assuring these post-bankruptcy creditors that, if the debtor fails to rehabilitate itself and winds up in liquidation, they can move to the front of the distributive line, ahead of the debtor's pre-bankruptcy creditors.

*Id.* The Court then determined that the latter policy—namely, the granting of priority to the claims of creditors who continue to do business with an insolvent debtor—prevailed under the circumstances of the case before it; and it held that the landlord's future rent claim was entitled to administrative expense priority. *Id.* at 21.

■ Here, as in *Klein Sleep*, the two competing bankruptcy policies delineated above collide; and here, as in *Klein Sleep*, the latter concern prevails. In order to advance the goal of avoiding liquidation, there is no distinction between the priority given to creditors who renew pre-petition leases through an assumption of the lease by the debtor in possession with the approval of the bankruptcy court, and the priority given to creditors who, with the approval of the bankruptcy court, enter into newly executed leases with the debtor in possession. As stated by the *Klein Sleep* Court, to encourage business dealings with a reorganizing debtor,

> [s]pecial priority is ... accorded to expenses incurred under new contracts with the debtor, as "administrative expenses" of the estate. The *same priority* is given to expenses arising under pre-existing contracts that the debtor "assumes"—contracts whose benefits and burdens the debtor decides, with the bankruptcy court's approval, are worth retaining.

*Id.* at 20 (emphasis added).

■ That a newly executed, post-petition contract and an assumed, pre-petition contract receive similar treatment is not surprising, as each is the functional equivalent of the other. An examination of the nature of the act of assuming a contract reveals the similarities between the two categories of contracts:

> The assumption of an executory contract by a Debtor–in–Possession is an act of administration creating an obligation of the estate which is legally distinct from the obligations that existed prior to an assumption of the contract. In contrast to the rejection of an unassumed contract which arises from a transaction with the prebankruptcy Debtor, the rejection of an assumed contract arises directly from a transaction with the Debtor–in–Possession. Thus, it is the Debtor–in–Possession which has caused legally cognizable injuries and the claims arising from those actions are entitled to priority as an administrative expense.

**52**

*In re Multech,* 47 B.R. 747, 750–51 (Bankr. N.D.Iowa) (internal citations omitted). Likewise, the execution of a new lease by the debtor in possession creates an obligation which is legally distinct from obligations which existed pre-petition; and, with the execution of a new lease, it is the debtor in possession who has caused legally cognizable injuries.

■ Indeed, the provision for assumption of pre-petition contracts is designed to ensure that debtors in possession re-examine pre-petition contracts in the same way that they would examine new, post-petition agreements:

> In both [the assumption of a pre-petition contract and the execution of a post-petition contract], the debtor in possession has had the same opportunity to judge whether the contract is in the best interests of the estate and of its creditors. Indeed, the power given the debtor in possession or trustee to assume or reject executory contracts is intended to enable him to make a new decision as to the wisdom of the contract in light of the changed circumstances of bankruptcy or conversion, as if he were entering into a new contract.

*In re Chugiak Boat Works, Inc.,* 18 B.R. 292, 297 (Bankr.D.Alaska 1982) [hereinafter *In re Chugiak* ].

### In re Chugiak

Given the similarities between the assumption of a pre-petition lease and the execution of a post-petition lease—particularly when, as here, the bankruptcy court expressly authorized the execution of the post-petition contract—I am persuaded that the *Klein Sleep* holding governs the outcome of this case. This conclusion is supported by *Klein Sleep*'s heavy reliance on the analysis of *In re Chugiak,* 18 B.R. 292, where the bankruptcy court expressly held that newly executed, post-petition contracts are entitled to administrative expense priority. Indeed, the *Klein Sleep* Court relied on *In re Chugiak* to establish that an assumed, pre-petition contract should be given administrative expense priority for the very reason that such a contract is fundamentally similar to a newly executed, post-petition contract:

> [T]he bankruptcy court's ... decision to let Klein Sleep assume the unexpired lease—a decision that was not appealed—precluded a subsequent finding that assuming the lease did not benefit Klein Sleep. That decision required a judicial finding—up-front—that it was in the best interests of the estate (and the unsecured creditors) for the debtor to assume the lease.... It is the same kind of finding that the bankruptcy court is required to make with regard to all new contracts entered into by the trustee without prior court approval during the administration of the estate in order for those contracts to qualify for priority pursuant to § 503(b).

As one bankruptcy court [in *In re Chugiak* ] has explained:

> By requiring the court to determine the reasonable necessity of the newly entered contract under 503(b), Congress has insured some judicial control over the determination of what executory contracts will be granted administrative expense priority.... *By limiting automatic administrative expense treatment under § 365(g) to assumed contracts, and by requiring initially entered contracts to qualify under 503(b) in order to be granted an administrative expense priority, Congress has insured both similar treatment and similar procedural safeguards for these fundamentally similar obligations.*

*Klein Sleep,* 78 F.3d at 25–26 (quoting *In re Chugiak,* 18 B.R. at 297–98) (emphasis added) (citations omitted). Again, in this case, the similarities between an assumed, pre-petition contract and a newly executed, post-petition contract are even more evident, because the landlord insisted that the newly executed lease be presented to the bankruptcy court for its approval. Thus, like an assumed, pre-petition lease, this newly executed, post-petition lease was expressly authorized—"up-front"—by the bankruptcy court.

■ The *Klein Sleep* Court also relied heavily on the discussion in *In re Chugiak* of the relevant sections of the former Bankruptcy Act ("the Act"), which closely linked newly executed, post-petition contracts and as-

sumed, pre-petition contracts. The Act is relevant in this instance because when, as here, an ambiguity exists as to the proper interpretation of the Bankruptcy Code, the ambiguity must be resolved in a manner consistent with pre-Code practice. *Klein Sleep,* 78 F.3d at 27.

The Act provided that "[w]hen a contract *entered into or assumed* in a superseded proceeding is rejected, the resulting liability should constitute a cost of administration of the superseded proceeding." *Id.* (emphasis added) (internal quotations and citations omitted). Relying on *In re Chugiak*'s discussion of the legislative history of that provision of the Act, the *Klein Sleep* Court concluded that "resulting liability" included damages for future rent:

> In this context, the "resulting liability" would be the landlord's damages for future rent and, arguably, for related costs such as legal and brokerage fees. This conclusion is supported by the legislative history of the foregoing language of the Bankruptcy Act, which was well described by the bankruptcy court in [*In re Chugiak* ]:
>
> > In 1967, Congress amended Chapters X, XI, and XII of the Bankruptcy Act of 1898.... The amendment specifically provided that any executory contract *entered into or assumed* during the reorganization proceeding but rejected after the conversion to straight bankruptcy constituted an administrative expense of the reorganization proceeding.... Thus, pursuant to the 1967 amendment, *all executory contracts originally entered into during the reorganization as well as all executory contracts assumed during that time* were automatically granted administrative expense priority.

*Id.* (citations omitted) (emphasis added).

■ Of course, by interpreting the Act to impart administrative expense priority status to future rent claims arising from the rejection of an assumed lease, the Second Circuit effectively held that the Act conferred administrative expense priority status on future rent claims arising from the rejection of a newly executed lease, as the relevant sections of the Act treat the two categories of contracts alike. And, as mentioned above, "[a]b-

sent a clear Code directive, or legislative history that directly addresses the issue and reaches a contrary result, ... [appellants'] claim for post-rejection rental damages should be governed by Bankruptcy Act practice." *Id.* at 28.

### *Trustee's Arguments*

In arguing that appellants' future rent claim does not constitute an administrative expense, trustee makes arguments that were addressed by, and rejected by, the *Klein Sleep* Court. First, trustee maintains that debtor in possession received no benefit from the 1994 lease once it vacated the headquarters. The *Klein Sleep* Court expressly rejected that argument, reasoning that, if it were to give it credence, then "any post-bankruptcy contract, entered into for the benefit of a bankrupt's estate, would cease to be entitled to priority the moment the deal turned sour." *Id.* at 26.

Trustee also argues that the grant of administrative expense status to appellants' future rent claim runs counter to one of the chief goals of the Bankruptcy Code, namely, the equalized distribution of the debtor's estate among all creditors. However, as discussed above, in this case, as in *Klein Sleep,* the goal of equalizing the distribution of the debtor's estate collides with another bankruptcy goal, the promotion of the economic viability of the debtor during reorganization proceedings. In resolving that collision of concerns in favor of the latter policy, the *Klein Sleep* Court stated:

> The conclusion we reach seems on its face to be unduly favorable to landlords. But it may in fact do no more than recognize the existence of a default rule, which the bankruptcy court can use in encouraging landlords and tenants alike to renegotiate leases in bankruptcy so as to treat all the parties, including general unsecured creditors, equitably.

*Id.* at 21.

Similarly, by determining that the *Klein Sleep* decision governs the outcome of this case, I reach a result that may seem unduly favorable to landlords. Nonetheless, the resolution of this case, which requires nothing

more than a natural extension of the *Klein Sleep* analysis, continues to provide bankruptcy courts with a default rule to use to encourage the negotiation of equitable leases where, as here, the lease is presented to the bankruptcy court for the court's authorization. Under such circumstances,

> bankruptcy courts will rarely find that assuming liability for all future rent under a long-term lease is in the best interests of the estate—including the interest of the general creditors—unless the rental terms are highly advantageous. They will therefore block ... such leases except in unusual cases.

*Id.* at 29. (Of course, in this case, the bankruptcy court did not have the benefit of this default rule, as *Klein Sleep* was issued more than a year after the bankruptcy court authorized the lease.)

Finally, trustee attempts to distinguish *Klein Sleep* on the ground that the contract there was rejected during a Chapter 11 liquidation of the estate, rather than a Chapter 7 liquidation. Trustee cites no authority for this position; and independent research reveals no such authority. Indeed, *In re Chugiak* involved a claim arising from an executory contract entered into in the course of a Chapter 11 reorganization and subsequently rejected *after conversion to Chapter 7. See* 18 B.R. at 293. Moreover, as discussed above, the policy behind granting administrative expense priority to such claims is to provide an incentive for parties to conduct business with a reorganizing debtor despite the lingering prospect of liquidation. The need for that policy, and the implementation of the policy, are unaffected by the type of liquidation to which the estate might ultimately become subject.

### CONCLUSION

For the aforementioned reasons, the bankruptcy court's decision is reversed to the extent that it denies administrative expense priority status to appellants' future rent claim; and the case is remanded to the bankruptcy court for further proceedings consis-

tent with this opinion. As both parties agree, the bankruptcy court is the appropriate forum for the consideration of the issue of the amount of damages to be awarded, as well as any related issues that arise as a result of this opinion.[2]

SO ORDERED.

---

**2.** At oral argument, appellants acknowledged that they have waived on appeal the issue of the propriety of the bankruptcy court's decision to

delay payment of the appellant's Chapter 11 claim until after the Chapter 7 trustee filed his Final Report and Accounting.