Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Compton,* S.J.

RESTAURANT COMPANY, ET AL.

v.  Record No. 051451  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    April 21, 2006
UNITED LEASING CORPORATION

FROM THE CIRCUIT COURT OF HANOVER COUNTY
John R. Alderman, Judge

In this appeal, we decide what effect, if any, the
assumption of an unexpired lease in a Chapter 11 bankruptcy
plan had on the running of the statute of limitations with
regard to obligations under surety agreements.  Because
assuming an unexpired lease in bankruptcy did not create a
new obligation between the parties to the original lease,
we find that the statute of limitations as to the sureties'
obligations began to run from the time of the principal
obligor's initial default and did not commence anew when
the Chapter 11 bankruptcy plan was confirmed.  Thus, we
will reverse the judgment of the circuit court.

I. RELEVANT FACTS AND PROCEEDINGS

Havana '59, Ltd. (Havana) opened a restaurant in
Richmond, Virginia in 1994.  As part of its business
operations, Havana entered into four equipment lease

---

* Senior Justice Compton participated in the hearing
and decision of this case before his death on April 9,
2006.

agreements with United Leasing Corporation (United).  The
lease agreement at issue in this appeal bears the date of
September 21, 1994 and has the designation of "Lease No.
3084."[1]  In that agreement, Havana leased from United
"Restaurant Equipment, Furniture and Smallwares."

In two separate but identical documents, each titled
"GUARANTY," The Restaurant Company and Rochelle Holding
Company (the Sureties), guaranteed the performance of
Havana's obligations under Lease No. 3084.[2]  In pertinent
part, each agreement stated:

> [T]he Undersigned [meaning The Restaurant Company
> in one agreement and Rochelle Holding Company in
> the other agreement] jointly and severally
> unconditionally guarantee to [United] the full
> and prompt performance by [Havana] . . . of all
> obligations which [Havana] presently or hereafter
> may have to [United] and payment when due of all
> sums presently or hereafter owing by [Havana].
>
> For the purpose of this guaranty and
> indemnity, all sums owing to [United] by [Havana]
> shall be deemed to have become immediately due
> and payable if (a) [Havana] defaults in any of
> its obligations to [United]; (b) a petition under

---

[1] In addition to Lease No. 3084, Havana also entered
into Lease No. 3083 in September 1994.  Havana executed the
third lease, Lease No. 4210, in October 1995.  Finally,
Havana entered into the fourth lease, Lease No. 4536, in
September 1997.

[2] As with Lease No. 3084, the Sureties executed
separate agreements guaranteeing the performance of
Havana's obligations under Lease No. 3083.  Michael J.
Ripp, the president and one of the owners of Havana,
guaranteed the performance of Havana's obligations under
Lease No. 4210 and Lease No. 4536.

any chapter of the Bankruptcy Code, as amended, or for the appointment of a receiver of any part of the property of [Havana] be filed against [Havana] . . . ; (c) such a petition be filed by [Havana].

This shall be a continuing guaranty and indemnity and, irrespective of the lack of any notice to or consent of [the Sureties], their obligations hereunder shall not be impared [sic] in any manner whatsoever . . . .

Notice of your acceptance hereof, of default and non-payment by [Havana] or any other parties, of presentment, protest and demand, and of all other matters of which [Restaurant Company or Rochelle Holding Company] otherwise might be entitled, is waived.[3]

Havana suffered from financial difficulties early in its operation, and first defaulted on its obligations under Lease No. 3084 in 1994. It continued to default on those

---

[3] Although the actual agreements at issue bear the title of "GUARANTY," the circuit court concluded that The Restaurant Company and Rochelle Holding Company were accommodation sureties. The parties have not assigned error to that ruling. See Rule 5:17(c); but see, The Phoenix Ins. Co. v. Lester Bros., Inc., 203 Va. 802, 807, 127 S.E.2d 432, 436 (1962) (noting difference between contract of a guarantor and that of a surety); Piedmont Guano & Mfg. Co. v. Morris, 86 Va. 941, 944-45, 11 S.E. 883, 884 (1890) (same). Accordingly, this Court will treat them as accommodation sureties, meaning they receive the "benefit of the strictissimi juris rule." Board of Supervisors of Fairfax County v. Southern Cross Coal Co., 238 Va. 91, 94, 380 S.E.2d 636, 638 (1989). Under that rule, any change in the underlying obligation discharges a surety's obligation. Id. The rule, however, is limited by the terms of the surety agreement itself. See American Surety Co. v. Quincey, 125 Va. 1, 11, 99 S.E. 641, 644 (1919) ("whatever that contract is, the surety is bound by it").

obligations through at least 2002. In October 1996, Havana filed for Chapter 11 bankruptcy protection. See 11 U.S.C. § 301 (1994); 11 U.S.C. §§ 1101 to 1174 (1994 & Supp. I 1996). The United States Bankruptcy Court for the Eastern District of Virginia confirmed Havana's Second Amended Plan of Reorganization in September 1997. Regarding Lease No. 3084, Havana's bankruptcy plan stated, "[t]he second [United] lease . . . calls for monthly payments of $1,111.85 for 60 months. The Debtor is current on this lease and will assume it in its entirety."

Because Havana continued to default on Lease No. 3084 after confirmation of its bankruptcy plan, United filed an amended motion for judgment against Havana, the Sureties, and Michael J. Ripp for the amounts due and owing under all four leases, plus attorney's fees and costs. As an affirmative defense, the defendants asserted that the applicable statute of limitations barred the action. The case proceeded to a bench trial.

With regard to the statute of limitations issue before us, the circuit court, in a letter opinion, concluded that the Uniform Commercial Code governed the leases in question, and that the applicable limitations period was

four years from the date of breach.[4]  See Code § 8.2A-

506(1).  To decide when the applicable statute of

limitations commenced to run, the circuit court looked to

Havana's Chapter 11 bankruptcy plan.  The court concluded

that

> the effect of Havana[]'s recommitment to the
> United . . . leases under its Second Amended
> Reorganization Agreement . . . is that the
> [s]tatute of [l]imitations on each lease
> specifically referred to in the Reorganization
> Agreement began to run again as if a new lease
> had been signed as of the date of that agreement.

The court viewed Havana's "recommitment to the leases as a

complete recommitment including the guarantor's

obligations."  Thus, the circuit court determined that the

four-year statute of limitations on Lease No. 3084

commenced to run at the time of the first default after

Havana's Chapter 11 bankruptcy plan was confirmed on

September 3, 1997.

The circuit court then decided that, per the lease

agreements, a default occurred when Havana failed to timely

pay an installment on a lease and United then charged a

---

[4] On brief, both parties discuss the statute of
limitations as being five years.  Neither party, however,
assigned error to the circuit court's ruling that the
appropriate statute of limitations is four years.  Thus,
the four-year statute of limitations in Code § 8.2A-506(1)
is the law of the case.  See Upper Occoquan Sewage Auth. v.
Blake Constr. Co., 266 Va. 582, 588, 587 S.E.2d 721, 724
(2003).

late fee. With regard to Lease No. 3084, the court concluded that the first post-bankruptcy default happened when United assessed a late fee on September 30, 1997 and that, therefore, United's filing of its motion for judgment on September 14, 2001, was within the four-year statute of limitations period.

After considering the evidence, the circuit court, as to Lease No. 3084, entered judgment against the Sureties in the amount of $88,769.20, plus attorney's fees in the amount of $17,753.84.[5] This appeal followed.

## II. ANALYSIS

On appeal, the Sureties assert, among other things, that the circuit court erred in finding that United's claim against them under Lease No. 3084 was not barred by the applicable statute of limitations.[6] To decide that issue, we must examine the nature of a Chapter 11 bankruptcy and determine whether the assumption of an unexpired lease

---

[5] The circuit court also entered judgment against the other defendants in different amounts depending on their respective liability under the various leases. In doing so, the circuit court, however, held that the statute of limitations had run with regard to any breach of Lease No. 4210. These rulings are not before us in this appeal. Finally, the parties settled United's claim under Lease No. 3083.

[6] Because this issue is dispositive, we will not address the remaining assignments of error.

creates a new obligation between the parties to the original lease.

Relying on a leading bankruptcy law treatise, the circuit court concluded the "[s]tatute of [l]imitations on each lease specifically referred to in the Reorganization Agreement began to run again as if a new lease had been signed as of the date of that agreement."  In relevant part, that treatise states:

> If an executory contract or unexpired lease is assumed after the case is commenced, the assumption creates a new administrative obligation of the estate.  Thus, a breach of the obligations after assumption gives rise to an administrative claim of first priority.  Further, in a . . . Chapter 11 . . . case, an assumed obligation is a postpetition obligation that is not discharged, and which therefore continues to be an obligation of the reorganized debtor.

2 William L. Norton, Jr., Norton Bankruptcy Law & Practice 2d § 39:27, at p. 39-87 (1997).  The circuit court's decision turned on its view that assuming an unexpired lease in a Chapter 11 bankruptcy plan was tantamount to executing a new lease.  We do not agree.

In its most basic sense, a Chapter 11 bankruptcy proceeding allows a debtor to reorganize its business, while continuing to operate.[7]  See In re Chateaugay Corp.,

_____

[7] The changes in the United States Bankruptcy Code that became effective on October 17, 2005 have no bearing on the issues in this appeal.

130 B.R. 162, 166 (S.D.N.Y. 1991); 7 Collier on Bankruptcy ¶ 1100.01 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2005).  The Chapter 11 debtor-in-possession must file a reorganization plan that enables it to continue its business and to emerge from bankruptcy as a viable concern. See Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988); 7 Collier, supra, at ¶ 1100.9.  As pertinent to the case before us, a Chapter 11 reorganization plan may "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected."  11 U.S.C. § 1123(b)(2) (1994); see also 11 U.S.C. § 365(a) (1994) ("the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor").

Explaining the purpose of a Chapter 11 bankruptcy proceeding and the effect of assuming an executory contract or unexpired lease, the United States Court of Appeals for the Second Circuit stated:

> Bankruptcy law also aims to avoid liquidation altogether when that is possible. . . .  It does this by allowing a debtor to attempt to reorganize rather than fold and by creating incentives for creditors to continue to do business with the debtor while reorganization proceeds.  The Code does this, at least in part, by assuring these post-bankruptcy creditors that, if the debtor fails to rehabilitate itself and winds up in liquidation, they can move to the front of the distributive line, ahead of the

8

> debtor's pre-bankruptcy creditors. Special priority is therefore accorded to expenses incurred under new contracts with the debtor, as "administrative expenses" of the estate. The same priority is given to expenses arising under pre-existing contracts that the debtor "assumes" – contracts whose benefits and burdens the debtor decides, with the bankruptcy courts approval, are worth retaining.

In re Klein Sleep Products, Inc., 78 F.3d 18, 20 (2d Cir. 1996).

"The rights created by assumption of the lease constitute a post-petition administrative claim under section 503(b)(1)(A) of the [United States Bankruptcy] Code." In re Greystone III Joint Venture, 995 F.2d 1274, 1281 (5th Cir. 1991). A claim is deemed administrative and thus entitled to priority status upon distribution of the bankruptcy estate "only if it arises out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 101 (2d Cir. 1986) (internal quotation marks and citation omitted). In contrast, if a Chapter 11 debtor neither assumes nor rejects an unexpired lease, the lease continues in effect, but the lessor does not have a provable claim

against the bankruptcy estate. Greystone, 995 F.2d at 1281.

As noted, "a newly executed, post-petition contract and an assumed, pre-petition contract receive similar treatment" in a Chapter 11 bankruptcy proceeding. In re The Lamparter Organization, Inc., 207 B.R. 48, 51 (E.D.N.Y. 1997). This is so because "each is the functional equivalent of the other." Id. Both create obligations that are legally distinct from pre-petition obligations, id., and claims arising from both are afforded priority status in order to encourage third parties to conduct business with the debtor-in-possession, thereby facilitating its reorganization. Klein Sleep Products, 78 F.3d at 20.

But, the act of assuming an unexpired lease is merely "an act of administration" by the debtor-in-possession.[8] In

---

[8] Some courts view a debtor-in-possession as a "new juridical entity that is separate and apart from the [d]ebtor which existed prior to bankruptcy proceedings." In re Multech, 47 B.R. at 750; see also, In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976); In re V. Savino Oil & Heating Co., 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989); 7 Collier, supra, at ¶ 1101.01[3].
The Sureties have not argued that the entity assuming Lease No. 3084, i.e., the debtor-in-possession, was an entity legally distinct from the debtor Havana, who is the party listed as the "Lessee" in Lease No. 3084 and as the "Obligor" in the surety agreements at issue. But see, H.A. Seinsheimer Co. v. Greenaway, 159 Va. 528, 533, 166 S.E. 539, 541 (1932) (burden of proof was on the creditor to

re Multech Corp., 47 B.R. 747, 750 (Bankr. N.D. Iowa 1985).

Contrary to the circuit court's finding, assumption of Lease No. 3084 by the debtor-in-possession was not equivalent to the execution of a new lease by Havana. Nothing about the terms of Lease No. 3084 changed; the debtor-in-possession assumed the lease in its entirety. The fact that an assumed, pre-petition unexpired lease is treated the same as a new, post-petition lease, for purposes of establishing the priority of payments from the bankruptcy estate in the event the reorganization is unsuccessful, did not transform the assumed Lease No. 3084 into a new lease with United.[9]

Nor do we agree with United's argument that assuming an unexpired lease in a Chapter 11 bankruptcy proceeding is equivalent to a new promise to pay under Code § 8.01-229(G). In pertinent part, the statute provides that

> [i]f any person against whom a right of action has accrued on any contract, . . . promises, by

_____

prove that a claim fell within the scope of the guaranty agreement and that the obligations incurred were for the account covered by the guaranty).

[9] Since the assumption of Lease No. 3084 did not create a new obligation between Havana and United, the circuit court's finding that the Sureties' agreements were "continuing" is of no consequence. See Pascoe Steel Corp. v. Shannon, 224 Va. 530, 534, 298 S.E.2d 97, 99 (1982) ("a guaranty, unlimited as to time, but given in circumstances evidencing the guarantor's intent to cover a series of transactions, will be construed as a continuing one").

writing signed by him . . . , payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action.

Code § 8.01-229(G)(1). "[T]he effect of a 'new promise in writing' is to begin the running of a new statute of limitations permitting suit 'within such number of years after such promise as it might be maintained if such promise were the original cause of action.' " Board of Supervisors v. Sampson, 235 Va. 516, 521, 369 S.E.2d 178, 180 (1988) (citation omitted). As already explained however, assumption of an unexpired lease in a Chapter 11 bankruptcy plan does nothing more than "determine[] the status of the contracting creditor's claim, namely whether 'it is merely a pre-petition obligation of the debtor or is entitled to priority as an expense of administration of the estate.' " In re Univ. Med. Ctr., 973 F.2d 1065, 1078 (3d Cir. 1992) (quoting Leasing Serv. Corp. v. First Tenn. Bank Nat'l Ass'n, 826 F.2d 434, 437 (6th Cir. 1987)); accord In re National Steel Corp., 316 B.R. 287, 304 (Bankr. N.D. Ill. 2004). An assumption is not a new promise to pay under Code § 8.01-229(G).[10]

---

[10] The provisions in Code § 11-2.01 regarding a promise to pay after bankruptcy apply only to a debt discharged in bankruptcy.

Moreover, in order for an acknowledgement in writing to operate as a new promise to pay, and commence the running of a new statute of limitations period, it "must not consist of equivocal, vague and indeterminate expressions; but ought to contain an unqualified and direct admission of a previous, subsisting debt, which the party is liable for and willing to pay."  Nesbit v. Galleher, 174 Va. 143, 148, 5 S.E.2d 501, 503 (1939); see also Preston County Coke Co. v. Preston County Light & Power Co., 119 S.E.2d 420, 430 (W. Va. 1961) (the writing "must be a clear and definite acknowledgment of a precise sum, importing a willingness and liability to pay").  Havana's Chapter 11 bankruptcy plan merely stated that Lease No. 3084 would be assumed in its entirety.  The plan contained no language about paying a "previous, subsisting debt."  Nesbit, 174 Va. at 148, 5 S.E. at 503.  In fact, the plan stated that Havana was current at that time with regard to its obligations under Lease No. 3084.  Indeed, if Havana had been in default, the debtor-in-possession could not have assumed Lease No. 3084 without, among other things, first curing the default or providing adequate assurances that the default would be promptly cured.  See 11 U.S.C. § 365(b)(1)(A) (1994); In re PRK Enters., Inc., 235 B.R. 597, 600-01 (Bankr. E.D. Tex. 1999).

13

In concluding that the circuit court erred in finding that the assumption of Lease No. 3084 was equivalent to Havana's having executed a new lease, we also find that the circuit court erred by holding that the four-year statute of limitations began to run at the time of Havana's first default after confirmation of its Chapter 11 bankruptcy plan.  Instead, the statute of limitations as to the Sureties' liability began to run in 1994 when Havana first failed to fulfill its obligations under Lease No. 3084. The surety agreements provided that all sums owing to United by Havana would become immediately due and payable if Havana defaulted in any of its obligations.[11]

The Sureties made a direct promise to United to perform Havana's obligations under Lease No. 3084 in the event Havana failed to do so.  See Courson v. Simpson, 251 Va. 315, 320, 468 S.E.2d 17, 20 (1996).  "Where a surety's liability for the principal's obligation has been established, the surety is liable for the whole debt." Board of Supervisors of Fairfax County v. Southern Cross Coal Corp., 238 Va. 91, 96, 380 S.E.2d 636, 639 (1989). Upon default by Havana, United's right to proceed against

_____

[11] The surety agreements also stated that all sums would become due and owing upon Havana's filing a petition under any chapter of the United States Bankruptcy Code.

14

the Sureties existed independently of its right to proceed against Havana.  See First Virginia Bank-Colonial v. Baker, 225 Va. 72, 77, 301 S.E.2d 8, 11 (1983) (citing 74 Am. Jur. 2d Suretyship § 135 (1974)).  That right accrued upon Havana's default in 1994.[12]  Since United did not file this action until September 2001, the four-year statute of limitations barred the action.[13]

The only remaining question is whether Havana's Chapter 11 bankruptcy tolled the running of the applicable statute of limitations.  Filing for bankruptcy protection automatically stays any action against the debtor.  11 U.S.C. § 362(a) (1994).  It is well-established that the automatic stay does not extend to actions brought against a surety.  See Winters v. George Mason Bank, 94 F.3d 130, 133 (4th Cir. 1996) ("[i]t is well settled that the automatic stay does not apply to non-bankrupt co-debtors, . . . nor

---

[12] We find no merit in United's argument that the Sureties failed to prove when the statute of limitations commenced to run because they did not establish when United called upon them to make payment.  Unlike the guaranty agreement at issue in McDonald v. National Enterprises, Inc., 262 Va. 184, 192, 547 S.E.2d 204, 209 (2001), the surety agreements presently before us did not contain terms requiring United to demand payment from the Sureties.

[13] The statute of limitations would also bar the action if the four-year period did not commence to run until Havana filed its Chapter 11 bankruptcy petition in 1996 since that event also triggered the Sureties' obligations under the terms of their agreements.

. . . prevent actions against guarantors of loans) (citations omitted); In re Lockard, 884 F.2d 1171, 1179 (9th Cir. 1989) (refused to extend the automatic stay noting "a surety has obligations that are 'independent' and primary, not derivative of those of the debtor"); see also Cumberland Metals, Inc. v. Kentucky Insurance Guaranty Assoc., 801 S.W.2d 339, 340 (Ky. Ct. App. 1990) ("a stay granted to [a] debtor does not extend to the surety"); Seaboard Surety Co. v. Board of Chosen Freeholders of the County of Warren, 537 A.2d 310, 313 (N.J. Super. Ct. App. Div. 1988) ("[t]he law is well settled that the automatic stay provided for by the bankruptcy law extends only to claims against the debtor himself and not against others, including sureties, whose liability to the creditor for the obligations of the debtor has an independent basis"). Because the automatic stay did not bar United's independent right to proceed against the Sureties, Havana's filing for bankruptcy protection did not toll the statute of limitations with regard to United's claim against the Sureties. See Fountain Sand and Gravel Co. v. Chilton Constr. Co., 578 P.2d 664, 665 (Colo. Ct. App. 1978) ("principal's bankruptcy does not toll the statute of limitations on an action against the surety"); United States Fire Ins. Co. v. State, 843 S.W.2d 283, 286 (Tex.

App. 1992)(debtor's bankruptcy had no effect on cause of action against surety).

In summary, we conclude that the circuit court erred in finding that the assumption of Lease No. 3084 in Havana's Chapter 11 bankruptcy plan was equivalent to Havana's having executed a new lease with United. Thus, the four-year statute of limitations with regard to the Sureties' liability commenced to run in 1994 when Havana initially defaulted on its obligations under Lease No. 3084. Havana's bankruptcy proceeding did not toll the running of the statute of limitations. Therefore, the four-year statute of limitations barred the present action filed in September 2001.

### III. CONCLUSION

For those reasons, we will reverse the circuit court's judgment against the Sureties under Lease No. 3084 and enter final judgment in favor of the Sureties.

<u>Reversed and final judgment</u>.